## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE DUCTILE IRON PIPE FITTINGS ("DIPF") DIRECT PURCHASER ANTITRUST LITIGATION | Civ. No. 12-711 (AET)(LHG) |

### DECLARATION OF ROBERT N. KAPLAN IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH SIGMA CORPORATION AND ITS OWNED SUBSIDIARY SIGMA PIPING PRODUCTS CORPORATION

I, Robert N. Kaplan, declare:

1.    I am a partner in the law firm of Kaplan Fox & Kilsheimer LLP.  The Court has appointed me as one of two Interim Co-Lead Counsel in this case.  I submit this declaration in support of Direct Purchaser Plaintiffs' Motion for Preliminary Approval of the Settlement Agreement with Defendant SIGMA Corporation and its owned subsidiary SIGMA Piping Products Corporation (collectively, "SIGMA"), dated May 21, 2015, Exhibit A hereto.  I have personal knowledge of the information set forth in this declaration.

2.    The settlement discussions with SIGMA took place over the course of many months. In September 2014, SIGMA provided Interim Co-Lead Counsel with extensive information about its financial position, which was thoroughly vetted by Interim Co-Lead Counsel and their financial consultant.  Initial settlement discussions occurred through an exchange of numerous telephone calls

and email throughout the month, as well as an in-person meeting between counsel on September 15, 2014.

3.      Direct Purchaser Plaintiffs' financial consultant continued to analyze information from SIGMA in October, while SIGMA provided additional financial information and counsel exchanged further communications by telephone and email.  On October 20, 2014, a second meeting between counsel was held, and was attended by Direct Purchaser Plaintiffs' financial consultant and a SIGMA executive knowledgeable about SIGMA's finances.  The majority of this meeting was dedicated to a detailed discussion of SIGMA's financial position, and its impact on any settlement.  On December 12, 2014, a third meeting was held, this time attended by SIGMA's Chief Financial Officer, as well as counsel for both parties.  While the parties were unsuccessful in reaching agreement at the October 20 or December 12 meetings, communications between counsel continued.

4.      These discussions were followed by a two-day mediation on January 27 and 28, 2015 before the Honorable Joel B. Rosen, U.S.M.J. (Ret.). Taking into consideration SIGMA's financial condition, which was analyzed extensively as described above, at the second day of mediation the parties reached an agreement in principle and negotiated a term sheet.

5.      Following additional negotiations regarding the terms of the settlement agreement, Co-Lead Counsel and counsel for SIGMA signed the Settlement Agreement with an execution date of May 21, 2015.

6.      Both sides vigorously negotiated their respective positions on all material terms of the Settlement Agreement and the negotiations were non-collusive.

7.      In connection with these settlement negotiations, Plaintiffs' Co-Lead Counsel were informed of the facts concerning liability and damages issues, the relative strengths and weaknesses of each side's litigation position, and Sigma's financial condition.

8.      I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of May, 2015.


_____
Robert N. Kaplan

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE DUCTILE IRON PIPE FITTINGS ("DIPF") DIRECT PURCHASER ANTITRUST LITIGATION | Civ. No. 12-711 (AET)(LHG) |

## <u>SETTLEMENT AGREEMENT</u>

This Settlement Agreement (also referred to as "Settlement" or "Agreement") is made and entered into this 21st day of May, 2015 (the "Execution Date"), by and between Defendant, SIGMA Corporation and its subsidiary SIGMA Piping Products Corporation (collectively, "SIGMA") and the Direct Purchaser Plaintiffs (also referred to as "Plaintiffs"), individually and on behalf of two Settlement Classes of direct purchasers of ductile iron pipe fittings ("DIPF"), who are parties to litigation consolidated in *In re Ductile Iron Pipe Fittings ("DIPF") Direct Purchaser Antitrust Litigation, Case No. 12-711* (AET)(LHG) (D. N.J.) (the "Action").

WHEREAS, Plaintiffs brought the Action alleging that SIGMA participated in (i) a conspiracy to raise, fix, maintain, or stabilize prices of DIPF in violation of Section 1 of the Sherman Act and (ii) a conspiracy to monopolize and unreasonably restrain trade in the market for Domestic DIPF (as defined below) in violation of Sections 1 and 2 of the Sherman Act;

WHEREAS, SIGMA denies each and every one of Plaintiffs' allegations and has asserted a number of defenses to Plaintiffs' claims;

WHEREAS, Plaintiffs and SIGMA agree that neither this Agreement nor any statement made in the negotiation thereof shall be deemed or construed to be an admission by or evidence against SIGMA of any violation of any state or federal law or of any liability or wrongdoing by

MW

SIGMA or evidence of the truth of any of the Plaintiffs' allegations or a waiver of any defenses thereto;

WHEREAS, arm's-length settlement negotiations have taken place between Interim Co-Lead Counsel (as defined below) and counsel for SIGMA, including a mediation before a Court-appointed mediator, and this Settlement Agreement has been reached as a result of those negotiations;

WHEREAS, following disclosure of significant information about SIGMA's financial position, Interim Co-Lead Counsel (as defined below) believe that the Settlement Amount (defined below) to be paid by SIGMA is fair and appropriate;

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the claims asserted in the Action, and have concluded that a settlement with SIGMA according to the terms set forth below is fair, reasonable and adequate and in the best interest of Plaintiffs and the members of the Settlement Classes (as defined below); and

WHEREAS, SIGMA believes that it is not liable for the claims asserted and has good defenses to Plaintiffs' claims, but nevertheless has decided to enter into this Settlement Agreement in order to avoid further expense, inconvenience, and the distraction of and delays associated with burdensome and protracted litigation;

NOW, THEREFORE, in consideration of the agreements and releases set forth herein and other good and valuable consideration, and intending to be legally bound, SIGMA and Plaintiffs agree that the Action be settled, compromised, and dismissed on the merits and with prejudice as to SIGMA only, without costs to Plaintiffs, the Settlement Classes, or SIGMA except as provided herein, subject to the approval of the Court, on the following terms and conditions:

A.  **Definitions**

The following terms, as used in this Settlement Agreement, have the following meanings:

1.    "Court" means the United States District Court for the District of New Jersey.

2.    "Defendants" collectively means (a) McWane, Inc. and its divisions Clow Water Systems Co., Tyler Pipe Company and Tyler Union (collectively, "McWane"), (b) SIGMA, and (c) Star Pipe Products, Ltd. ("Star").

3.    "DIPF" means ductile iron pipe fittings.  Ductile iron pipe fittings are used to join ductile iron pipes, valves, and hydrants within water systems as well as to change, divide, or direct the flow of water.

4.    "Domestic DIPF" means DIPF that is produced in the United States for domestic-only specifications.

5.    "Effective Date" means the first date by which all of the following have occurred: (a) neither Plaintiffs nor SIGMA have/has availed themselves/itself of any right to withdraw from or terminate the Settlement pursuant to Paragraphs 43 through 46, inclusive, herein, and; (b) the Court has entered a final judgment approving this Agreement under Rule 23(e) of the Federal Rules of Civil Procedure, and; (c) the Court has entered a final order and judgment approving the settlement agreement between SIGMA and the plaintiff classes in *In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litig.*, Civ. No. 12-169 (AET)(LHG) (D.N.J.) (the "Indirect Purchaser Plaintiff SIGMA Settlement"), and; (d) the Court has entered a final judgment dismissing any Releasee (as defined below) from the Action with prejudice and against Plaintiffs and as to all members of the Classes and without costs, and; (e) the Court has entered a final order and judgment dismissing any Releasee from *In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litig.*, Civ. No. 12-169 (AET)(LHG) (D.N.J.), and; (f) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final

3

judgment as described in clause (b) above has expired or, if appealed, approval of this Agreement and the final judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review, by certiorari or otherwise; provided, however, a modification or reversal on appeal of any amount of fees or expenses awarded by the Court from the Settlement Funds, or the amount of incentive payments to named Plaintiffs, shall not by itself prevent this Settlement Agreement from becoming final and effective if all other aspects of the final judgment have been affirmed, and; (g) the time for appeal or to seek permission to appeal from the Court's approval of the Indirect Purchaser Plaintiff SIGMA Settlement and entry of a final judgment as described in clause (c) above has expired or, if appealed, approval of the Indirect Purchaser Plaintiff SIGMA Settlement and the final judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review, by certiorari or otherwise; provided, however, a modification or reversal on appeal of any amount of fees or expenses awarded by the Court from the Settlement Funds, or the amount of incentive payments to named Plaintiffs, shall not by itself prevent this Settlement Agreement from becoming final and effective if all other aspects of the final judgment have been affirmed.  Neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.

      6.    "Escrow Account" is the account created to maintain the Settlement Fund (as defined below).

      7.    "Final Approval" means that the approval of the Settlement Agreement by the Court has become final, either by exhaustion of any time for a Settlement Class Member who has properly and timely objected to the Settlement to appeal such approval, with no appeal being filed,

or by completion of any appeals filed by Settlement Class Members which appeals have been resolved to uphold the Settlement.

8.      "Interim Co-Lead Counsel," as defined by the Court's May 14, 2012 order, means:

> Robert N. Kaplan
> Kaplan Fox & Kilsheimer LLP
> 850 Third Avenue, 14th Floor
> New York, NY 10022
>
> Kit A. Pierson
> Cohen Milstein Sellers & Toll PLLC
> 1100 New York Ave., N.W., Suite 500
> Washington, DC 20005

9.      "Non-SIGMA Defendants" means Defendants other than SIGMA.

10.     "Opt-Out Purchaser" means a member of the Settlement Classes who has timely exercised its rights to be excluded from the Settlement Classes.

11.     "Opt-Out Purchases" means the dollar amount of purchases of DIPF and Domestic DIPF directly from SIGMA by each Opt-Out Purchaser during the period from January 11, 2008, through December 31, 2013.

12.     "Opt-Out Percentage" means the total dollar amount of Opt-Out Purchases by all Opt-Out Purchasers divided by the sum of the total dollar amount of purchases of DIPF and Domestic DIPF from SIGMA by all persons or entities included within the Settlement Classes as defined in Paragraph 18, below, during the period from January 11, 2008, through December 31, 2013.

13.     "Plaintiffs" means City and County of Denver; Coastal Plumbing Supply Company Inc.; GCO, Inc. f/k/a Groeniger & Co.; HI Line Supply Co. Ltd.; John Hoadley & Sons, Inc.; Mountain States Supply LLC; Mountainland Supply LLC; and Public Works Supply Co., Inc.

MW

14. "Releasees" means SIGMA and all of its current and former parents, subsidiaries, affiliates, partners, officers and directors, agents, servants, workmen, employees, and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors, purchasers, and assigns of each of the foregoing) . Releasees does not include any Defendant in the Action other than SIGMA, including any Non-SIGMA Defendants' current and former parents, subsidiaries or officers and directors or employees.

15. "Releasors" means all Plaintiffs and the Settlement Class Members, including all of their current and former parents and subsidiaries, affiliates, partners, officers and directors, agents, employees, and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors, purchasers, and assigns of each of the foregoing) of any claim that is subject to the Release described in Paragraphs 29, 30, and 31.

16. "Settlement" means the settlement of the Action contemplated by this Agreement.

17. "Settlement Amount" means $4,895,000.

18. "Settlement Classes" means for purposes of settlement under this Agreement: (a) all persons or entities in the United States that purchased DIPF directly from any Defendant at any time from January 11, 2008, through June 30, 2011; and (b) all persons or entities in the United States that purchased Domestic DIPF directly from McWane or SIGMA at any time from September 17, 2009, through December 31, 2013. Excluded from the Settlement Classes are Defendants and their parents, subsidiaries and affiliates, whether or not named as a Defendant in this Action, federal governmental entities, and instrumentalities of the federal government.

19. "Settlement Class Member" means a member of either Settlement Class who does not properly elect to be excluded from that Settlement Class.

6

20.     "Settlement Fund" shall be the amount paid by SIGMA in settlement of this Action pursuant to Paragraphs 34 and 35 of this Agreement and any income earned on amounts in the fund.

21.     "Settling Parties" means Plaintiffs and SIGMA.

22.     "SIGMA Global Settlement" means collectively, this Settlement, the Indirect Purchaser Plaintiff SIGMA Settlement, and the settlement between SIGMA and the State of Indiana in *State of Indiana v. McWane, Inc., et al.*, No. 12-6667 (AET)(LHG) (D.N.J.) (the "Indiana SIGMA Settlement").

**B.     Stipulation to Class Certification**

23.     The parties to this Agreement hereby stipulate for purposes of this Settlement only that the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) are satisfied and, subject to Court approval, the Settlement Classes defined in Paragraph 18 shall be certified for settlement purposes as to SIGMA.

**C.     Approval of this Settlement Agreement and Dismissal of the Action**

24.     The Settling Parties agree to make reasonable efforts to finalize and effectuate this Agreement, including, but not limited to, seeking the Court's approval of procedures (including the giving of class notice and scheduling a final fairness hearing under Federal Rules of Civil Procedure 23(c) and (e)) to obtain Final Approval of the Settlement and the final dismissal with prejudice of the Action as to SIGMA.  Counsel for the Settling Parties further agree not to do anything to encourage any member of the Settlement Classes to oppose or obstruct the Settlement or to opt out of the Settlement.  SIGMA shall use its best efforts to encourage Settlement Class Members not to request exclusion from the Settlement, including any Settlement Class Members who may already have agreed to request exclusion or entered into tolling or similar agreements with SIGMA or another defendant.

7

25.     Promptly after the Execution Date, Plaintiffs shall submit to the Court a motion for preliminary approval of the Settlement, appointing Interim Co-Lead Counsel as Settlement Class Counsel for purposes of this Agreement, and certifying Settlement Classes for purposes of this Settlement.

26.     Notice to the Settlement Classes shall be given as follows or as otherwise deemed sufficient by the Court: After submission to the Court of proposed forms of mail and publication notice, Interim Co-Lead Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Court's order: (a) provide Settlement Class Members with notice by first-class mail of the Settlement and the date of the hearing to consider the fairness, adequacy, and reasonableness of the Settlement (the "Fairness Hearing"); and (b) cause a summary notice of the Settlement and the Fairness Hearing to be published once in such publication as the Court may direct. Plaintiffs may, as practicable, combine dissemination of notice of this Agreement and the proposed certification of the Settlement Classes with notice of other settlement agreements reached with any Non-SIGMA Defendants.

27.     SIGMA shall cause notice of the Agreement to be served upon appropriate state and federal officials to the extent and in the manner required by the Class Action Fairness Act, 28 U.S.C. § 1715.

28.     Plaintiffs shall seek entry of an order and final judgment as to SIGMA:

(a)     approving the Settlement as fair, reasonable, and adequate within the meaning of Rule 23(e) of the Federal Rules of Civil Procedure and directing the consummation of the Settlement according to its terms;

(b)     directing, as to SIGMA only, that the Action be dismissed with prejudice and, except as provided for herein, without costs;

(c)     reserving exclusive and continuing jurisdiction over the Settlement, including the administration and consummation of this Settlement, to the United States District Court for the District of New Jersey;

8

(d)     determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing entry of final judgment as to SIGMA; and

(e)     approving the release of claims specified herein as binding and effective as to all Class members and permanently barring and enjoining such class members from asserting any Released Claims (as defined in Paragraph 29).

**D.      Releases, Discharge, and Covenant Not to Sue**

29.     Upon the Effective Date and in consideration of payment of the Settlement Amount into the Escrow Account, Releasors shall be deemed to and do completely remise, release, acquit, and forever discharge Releasees from any and all claims, demands, actions, suits, injuries, and causes of action, damages of any nature, whenever or however incurred (whether actual, punitive, treble, compensatory, or otherwise), including claims for costs, fees, expenses, penalties, and attorneys' fees, whether class or individual, known or unknown, or otherwise, that Releasors, or any of them, ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity against any of the Releasees, whether in law or equity or otherwise, arising out of or relating to any conduct, act, or omission of any of the Releasees from the beginning of the World until the Effective Date, concerning any of the conduct alleged or that could have been alleged in the Action against SIGMA, including, without limitation, any claim whether under any federal or state antitrust, unfair competition, unfair practices, price discrimination, unjust enrichment, unitary pricing or trade practice law (the "Released Claims"). However, nothing herein shall release: (a) any claims based upon indirect purchases of DIPF or Domestic DIPF brought by prospective members of any class of indirect purchasers (the "Indirect Purchaser Class"); (b) any claims based upon purchases of DIPF or Domestic DIPF brought by the State of Indiana through its Attorney General; or (c) claims arising in the ordinary course of business for any product defect, breach of contract, product performance, or warranty claims relating to DIPF or Domestic DIPF.

30.     After the Effective Date, Releasors shall not seek, and are hereafter barred and enjoined from seeking, to recover from any Releasee based, in whole or in part, upon any of the Released Claims or conduct at issue in the Released Claims.  Released Claims do not include any claims arising out of the enforcement of this Agreement.

31.     In addition to the provisions of Paragraph 29 and 30 of this Settlement Agreement, Releasors hereby expressly waive and release upon the Effective Date any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code and Section 20-7-11 of the South Dakota Codified Laws, each of which provides that a general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor, and any similar provision, statute, regulation, rule, or principle of law or equity of any other state or applicable jurisdiction.  The Releasors acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they know or believe to be true with respect to the subject matter of this Agreement, but that it is their intention to release fully, finally, and forever all Released Claims, and in furtherance of such intention, this release shall be and remain in effect notwithstanding the discovery or existence of any such additional or different facts.

32.     Upon the Effective Date, SIGMA and the Releasees shall be deemed to have fully released Plaintiffs and their directors, officers, employees, and counsel from any claims relating to the institution or prosecution of the Action.

E.      **Payment**

33.     SIGMA's total payment hereunder shall be $4,895,000.  Within fifteen (15) business days from the Execution Date, SIGMA shall pay or cause to be paid by wire transfer to the Escrow Account $250,000 to be used only for notice and notice administration costs required

10

under this Settlement Agreement.   The amount spent or accrued for notice and notice administration costs is not refundable to SIGMA in the event the Settlement Agreement is not approved or is disapproved, rescinded or otherwise fails to become effective, provided, however, that in that event, any unused portions of the $250,000 shall be returned to SIGMA.  SIGMA shall have no financial responsibility for any notice or administration costs in excess of $250,000.

34.     SIGMA shall pay or cause to be paid by wire transfer the Settlement Amount of $4,895,000 in three equal installments by: (i) July 1, 2015 (reduced by the $250,000 separately paid or caused to be paid pursuant to Paragraph 33); (ii) July 1, 2016; and (iii) May 31, 2017.  In the event that SIGMA fails to make any of the payments when due and fails to cure such default within fifteen (15) business days, then the entire unpaid balance of the Settlement Amount shall be accelerated and become due and payable immediately.  In addition to such acceleration, interest shall be added to the entire remaining balance, calculated at the Federal Funds Rate plus 500 basis points, and running from the Execution Date to the date of payment of the remaining balance.

F.   **The Settlement Fund**

35.     The Settlement Fund is intended by the parties to this Agreement to be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. §1.468B-1, and to that end the parties to this Agreement shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment.  At the request of SIGMA, a "relation back election" as described in Treas. Reg. § 1.468B-1(j) shall be made so as to enable the Settlement Fund to be treated as a qualified settlement fund from the earliest date possible, and the parties shall take all actions as may be necessary or appropriate to this end.

36.     To the extent practicable, the Settlement Fund shall be invested in United States Government Treasury obligations or deposited in a federally insured account or United States

Treasury Money Market funds in an amount not exceeding $250,000 or the limits of federal insurance, whichever is greater.  All income earned on the Settlement Fund shall become and remain part of the Settlement Fund.

37.    SIGMA shall not have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such investment, distribution, and administration, except as expressly otherwise provided in this Agreement.

38.    As provided in paragraph 33, above, after preliminary approval of the Settlement, Interim Co-Lead Counsel may use a portion of the first installment paid into the Settlement Fund, not to exceed $250,000, to provide notice of the Settlement to Settlement Class Members and for notice administration, without an order from the Court.

39.    After the expiration of the time during which this Agreement could be rescinded for any of the reasons set forth in Paragraphs 43 through 46, Interim Co-Lead Counsel may at an appropriate time, determined in their sole discretion, submit a motion seeking approval of the payment of attorneys' fees and expenses from the Settlement Fund.  SIGMA shall not oppose any motion by Interim Co-Lead Counsel seeking approval of payment of attorneys' fees and past, current, or future expenses from the Settlement Fund.

40.    The distribution of the Settlement Fund shall be administered pursuant to a plan of allocation (the "Plan of Allocation") proposed by Interim Co-Lead Counsel and subject to the approval of the Court.  SIGMA shall have no participatory or approval rights with respect to the Plan of Allocation, and the Court's rejection of any Plan of Allocation shall not affect the validity or enforceability of this Settlement Agreement.

12

41.     Subject to Court approval, Plaintiffs and Interim Co-Lead Counsel shall be reimbursed and paid solely out of the Settlement Fund for all expenses and claims including, but not limited to, attorneys' fees and past, current, or future litigation expenses. Attorneys' fees and expenses awarded by the Court shall be payable from the Settlement Fund upon award, notwithstanding the existence of any timely-filed objections thereto, or potential for appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Interim Co-Lead Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, if and when, as a result of any appeal or further proceedings on remand, or successful collateral attack, the fee or cost award is reduced or reversed. SIGMA shall not be liable for any costs, fees, or expenses of any of Plaintiffs' respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court may be paid out of the Settlement Fund.

42.     The procedure for and the allowance or disallowance of any application for attorneys' fees and expenses are matters separate and apart from the Settlement and shall be requested to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. Any order or proceeding relating solely to an award of attorneys' fees and expenses, or any appeal from any order relating thereto, or any reversal or modification thereof, shall have no effect on the Settlement and shall not operate to, or be grounds to, terminate or cancel the Settlement or to affect or delay the finality of the final judgment approving the Settlement.

## G.      Rescission

43.     If the Court refuses to approve this Agreement or any material part hereof; if Court approval is modified or set aside on appeal; if the Court does not enter a final judgment as provided in Paragraph 28 of this Agreement; or if after the Court enters the final judgment, appellate review

13

is sought, and, on such review, such final judgment is not affirmed, then SIGMA and Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety by written notice to the Court and to counsel for the other Settling Party filed and served within ten (10) business days of the event triggering the right to rescind. A modification or reversal on appeal of any amount of the Settlement Fund that the Court authorizes to be used to pay Plaintiffs' litigation fees and expenses shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

44.     SIGMA shall, in its sole discretion, have the option to terminate this Agreement upon the occurrence of the condition relating to Opt-Out Purchasers, set forth in a Confidential Side Letter executed between Interim Co-Lead Counsel and SIGMA.

(a)     Within ten (10) calendar days after the end of the period established by the Court and set forth in the notice to request exclusion from the Settlement Classes, Interim Co-Lead Counsel shall provide SIGMA, through its counsel, with a written list of all Opt-Out Purchasers.

(b)     Within fifteen (15) calendar days of the delivery of the list described in Paragraph 44(a), SIGMA shall provide to Interim Co-Lead Counsel the total amount of Opt-Out Purchases and the resulting Opt-Out Percentage for each Opt-Out Purchaser and supporting data for Opt-Out Purchases.

(c)     In the event Plaintiffs dispute the amount of Opt-Out Purchases or the resulting Opt-Out Percentage as described in Paragraph 44(b), Plaintiffs must notify counsel for SIGMA within ten (10) calendar days from the delivery thereof. Such notification shall include the basis for any dispute and any supporting data or documentation. SIGMA shall respond to such notification with ten (10) calendar days. If, after good faith discussions about the dispute, the parties cannot agree on a resolution, they shall submit the dispute to arbitration for final resolution

pursuant to Paragraph 55 of this Agreement. Pending such final resolution, there shall be no further disbursements from the Settlement Fund.

(d)     In the event that the total Opt-Out Percentage is equal to or greater than the percentage set forth in the Confidential Side Letter, then SIGMA shall have the right to rescind this Agreement by providing written notice to Interim Co-Lead Counsel. Upon receipt of such notice, Interim Co-Lead Counsel may within ten (10) calendar days file with the Court and provide SIGMA's counsel with written notice of any challenge by Plaintiffs to such claim of entitlement to rescind this Agreement. In the event the parties are unable to agree upon SIGMA's right to rescind from this Agreement under this subparagraph, they shall submit the issue to arbitration pursuant to Paragraph 55 of this Agreement.

(e)     Plaintiffs may attempt to obtain rescission of any decision by an Opt-Out Purchaser to request exclusion prior to SIGMA invoking its right to rescind under this Paragraph.

45.     If the Agreement is rescinded for any reason, then the balance of the Settlement Amount in the Settlement Fund will be returned to SIGMA. In the event that the Settlement Agreement is rescinded, the funds already expended from the Settlement Fund for the costs of notice and administration will not be returned to SIGMA. Funds to cover notice and administration expenses that have been incurred but not yet paid from the Settlement Fund will also not be returned to SIGMA.

46.     If the Agreement is rescinded for any reason, then the Settling Parties will be restored to their respective positions in the Action as of the Execution Date. In that event, the Action will proceed as if this Agreement had never been executed and this Agreement, and representations made in conjunction with it, may not be used in the Action or otherwise for any

Mw

purpose. SIGMA and Plaintiffs expressly reserve all rights if the Agreement does not become effective or if it is rescinded.

**H.**   **Limited Discovery and Cooperation**

47.   Transaction Data. At Plaintiffs' request, SIGMA shall make available for interview and for deposition at SIGMA's counsel's offices in Philadelphia, PA and subject to the limitations set forth below, one or more employees as necessary to answer questions or testify concerning SIGMA's transaction, rebate and cost data and records, including but not limited to the subjects transmitted to SIGMA's counsel on September 26, 2014. Any such examination by deposition shall not exceed the time limitations of Rule 30(d)(1) of the Federal Rules of Civil Procedure for the aggregate of questioning by counsel for Direct Purchaser Plaintiffs, Indirect Purchaser Plaintiffs, Indiana, and any Non-SIGMA Defendant.

48.   Authentication of Documents. Upon request by Plaintiffs, SIGMA agrees to produce through affidavits or declarations, or one Rule 30(b) (6) deposition, if necessary, representatives qualified to establish for admission into evidence any of SIGMA's documents, and, to the extent possible, any SIGMA documents produced by any other party or non-party to the Action.

49.   Depositions. SIGMA shall not be required to have any of its present or former employees, shareholders, officers, or directors submit to any deposition more than 20 miles from the witness' home or usual place of business, except such witnesses may be deposed in Philadelphia, PA. SIGMA shall produce at its expense no more than six (6) fact witnesses. Any such examination of each of those witnesses by deposition shall not exceed the time limitations of Rule 30(d)(1) of the Federal Rules of Civil Procedure for the aggregate of questioning by counsel for Direct Purchaser Plaintiffs, Indirect Purchaser Plaintiffs, Indiana, and any Non-SIGMA Defendant. These depositions are in addition to the separate examination on Transactional Data

referred to in Paragraph 47 or for authentication of documents (if necessary) referred to in Paragraph 48 and, to the extent applicable, these depositions shall be subject to existing or future Court orders concerning depositions.

**I.     Most-Favored-Nation Provision**

50.     If a settlement is reached between (i) McWane or Star, on the one hand, and (ii) the Plaintiffs, the plaintiff classes in *In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litig.*, Civ. No. 12-169 (AET)(LHG) (D.N.J) (the "Indirect Purchaser Plaintiffs"), and the State of Indiana in *State of Indiana v. McWane, Inc.*, et al., No. 12-6667 (AET)(LHG) (D.N.J.) ("Indiana"), on the other hand, in an amount more favorable in the aggregate (as defined in a separate Confidential Global Side Letter) to either or both of McWane or Star than the aggregate amount of the SIGMA Global Settlement, then the SIGMA Global Settlement amount shall be reduced as determined in the Confidential Global Side Letter.

51.     Any dispute regarding the rights and obligations of the parties under Paragraph 50 which cannot be resolved by agreement of the parties shall be submitted to arbitration pursuant to Paragraph 55 of this Agreement.

**J.     Taxes**

52.     Interim Co-Lead Counsel shall be solely responsible for filing all informational and other tax returns necessary to report any net taxable income earned by the Settlement Fund; shall file all informational and other tax returns necessary to report any income earned by the Settlement Fund; and shall be solely responsible for taking out of the Settlement Fund, as and when legally required, any tax payments, including interest and penalties due on income earned by the Settlement Fund. All taxes (including any interest and penalties) due with respect to the income earned by the Settlement Fund shall be paid from the Settlement Fund. SIGMA shall have no responsibility to make any filings relating to the Settlement Fund and will have no responsibility

to pay tax on any income earned by the Settlement Fund or to pay any taxes on the Settlement Fund unless the Settlement is not consummated or is rescinded and the Settlement Fund is returned to SIGMA. In the event the Settlement is not consummated or is rescinded and any funds including interest or other income are returned to SIGMA, SIGMA shall be responsible for the payment of all taxes (including any interest or penalties), if any, on said interest or other income. SIGMA makes no representations regarding, and shall not be responsible for, the tax consequences of any payments made pursuant to this Agreement to Interim Co-Lead Counsel or to any Settlement Class Member.

K.     **Miscellaneous**

53.     All rights of any Settlement Class Member against former, current, or future defendants or co-conspirators or any other person other than the Released Parties are specifically reserved by Plaintiffs and the Settlement Class Members. The sales of DIPF by SIGMA shall, to the extent permitted or authorized by law, remain in the case against the other current or future defendants in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future defendants in the Action or other persons or entities other than the Released Parties.

54.     With the exception of matters expressly declared subject to arbitration in this Agreement, SIGMA and Plaintiffs and each member of the Settlement Classes hereby submit to the exclusive jurisdiction of the United States District Court for the District of New Jersey solely for the purpose of any suit, action, proceeding, or resolution of any dispute arising out of or relating to this Agreement or the applicability of this Agreement.

55.     Any controversy, claim or dispute arising out of, relating to, or in connection with the matters specifically designated to be submitted to arbitration under this Agreement shall be finally determined in arbitration before Hon. Joel Rosen as arbitrator, or such other arbitrator upon

whom the parties shall mutually agree.  Subject to the award of the arbitrator, the parties participating in an arbitration shall pay an equal share of the arbitrator's fees.  The arbitrator may award recovery of all costs (including administrative fees, arbitrator's fees, and court costs, but excluding attorneys' fees) to the prevailing party.  Judgment upon any award rendered may be entered in the United States District Court for the District of New Jersey.

56.     Any press release or other public statement published or authorized by SIGMA or its representatives regarding this Agreement or any of its terms shall be sent to Interim Co-Lead Counsel for their input and approval, which consent shall not be unreasonably withheld or unduly delayed.  Any press release or other public statement published or authorized by Plaintiffs or their representatives regarding this Agreement or any of its terms shall be sent to SIGMA's counsel for their input and approval, which consent shall not be unreasonably withheld or unduly delayed.

57.     This Agreement, together with the Confidential Side Letter referenced in Paragraph 44 and the Confidential Global Side Letter referenced in Paragraph 50, constitute the entire agreement among Plaintiffs and SIGMA pertaining to the Settlement of the Action against SIGMA.  This Agreement may be modified or amended only by a writing executed by Plaintiffs and SIGMA.

58.     Neither this Agreement nor any negotiations or proceedings connected with it shall be deemed or construed to be an admission by any party or any Releasee of any wrongdoing or liability or evidence of any violation by SIGMA of any federal or state statute or law either in the Action or in any related action or proceedings, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, except in a proceeding to interpret or enforce this Agreement. This Agreement represents the settlement of disputed claims and does not constitute, nor shall it be construed as, an admission of the correctness of any position asserted by any party,

MW

or an admission of liability or of any wrongdoing by any party, or as an admission of any strengths or weaknesses of the Plaintiffs' claims or SIGMA's defenses.  SIGMA specifically denies any wrongdoing or liability by any of the Releasees.

59.     This Agreement may be executed in counterparts by counsel for Plaintiffs and SIGMA, and a facsimile or a .pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

60.     Neither Plaintiffs nor SIGMA shall be considered the drafter of this Agreement or any of its provisions for the purpose of any statute, the common law, or rule of interpretation that would or might cause any provision of this Agreement to be construed against the drafter.

61.     The provisions of this Agreement shall, where possible, be interpreted in a manner to sustain their legality and enforceability.

62.     This Agreement shall be governed and interpreted according to the substantive laws of the State of New Jersey, without regard to its choice of law or conflict of law principles.

63.     Each party acknowledges that he, she, or it has been and is being fully advised by competent legal counsel of such party's own choice and fully understands the terms and conditions of this Agreement, and the meaning and import thereof, and that such party's execution of this Agreement is with the advice of such party's counsel and of such party's own free will.  Each party represents and warrants that it has sufficient information regarding the transaction and the other parties to reach an informed decision and has, independently and without relying upon the other parties, and based on such information as it has deemed appropriate, made its own decision to enter into this Agreement and was not fraudulently or otherwise wrongfully induced to enter into this Agreement.



20

64.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement.

IN WITNESS WHEREOF, the parties, through their respective counsel, have executed and delivered this Agreement as of the Execution Date.

Robert N. Kaplan
Richard J. Kilsheimer
Gregory K. Arenson
Elana Katcher
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY  10022

Gary L. Specks
KAPLAN FOX & KILSHEIMER LLP
423 Sumac Road
Highland Park, IL 60035

*Interim Co-Lead Counsel for*
*Direct Purchaser Plaintiffs*


Kit A. Pierson
Robert A. Braun
COHEN MILSTEIN SELLERS &
   TOLL PLLC
1100 New York Avenue, NW
Suite 500 West
Washington, DC  20005

Christopher J. Cormier
COHEN MILSTEIN SELLERS &
   TOLL PLLC
2443 S. University Blvd., No. 232
Denver, CO  80210

*Interim Co-Lead Counsel for*
*Direct Purchaser Plaintiffs*


Mayra V. Tarantino
LITE DEPALMA GREENBERG, LLC
Two Gateway Center – 12th Floor
Newark, New Jersey 07102

Karen A. Confoy
FOX ROTHSCHILD LLP
997 Lenox Dr. – Bldg. 3
Lawrenceville, New Jersey 08648

*Interim Co-Liaison Counsel for*
*Direct Purchaser Plaintiffs*


Matthew A. White
Leslie E. John
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

Roberto A. Rivera-Soto
BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002

*Counsel for SIGMA Corporation and*
*SIGMA Piping Products Corporation*

21

64.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement.

IN WITNESS WHEREOF, the parties, through their respective counsel, have executed and delivered this Agreement as of the Execution Date.

Robert N. Kaplan
Richard J. Kilsheimer
Gregory K. Arenson
Elana Katcher
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY  10022

Gary L. Specks
KAPLAN FOX & KILSHEIMER LLP
423 Sumac Road
Highland Park, IL 60035

*Interim Co-Lead Counsel for
Direct Purchaser Plaintiffs*

Kit A. Pierson
Robert A. Braun
COHEN MILSTEIN SELLERS &
   TOLL PLLC
1100 New York Avenue, NW
Suite 500 West
Washington, DC  20005

Christopher J. Cormier
COHEN MILSTEIN SELLERS &
   TOLL PLLC
2443 S. University Blvd., No. 232
Denver, CO  80210

*Interim Co-Lead Counsel for
Direct Purchaser Plaintiffs*

Mayra V. Tarantino
LITE DEPALMA GREENBERG, LLC
Two Gateway Center – 12th Floor
Newark, New Jersey 07102

Karen A. Confoy
FOX ROTHSCHILD LLP
997 Lenox Dr. – Bldg. 3
Lawrenceville, New Jersey 08648

*Interim Co-Liaison Counsel for
Direct Purchaser Plaintiffs*

Matthew A. White
Leslie E. John
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

Roberto A. Rivera-Soto
BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002

*Counsel for SIGMA Corporation and
SIGMA Piping Products Corporation*

21

64.    Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement.

IN WITNESS WHEREOF, the parties, through their respective counsel, have executed and delivered this Agreement as of the Execution Date.

Robert N. Kaplan
Richard J. Kilsheimer
Gregory K. Arenson
Elana Katcher
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022

Gary L. Specks
KAPLAN FOX & KILSHEIMER LLP
423 Sumac Road
Highland Park, IL 60035

*Interim Co-Lead Counsel for*
*Direct Purchaser Plaintiffs*

Kit A. Pierson
Robert A. Braun
COHEN MILSTEIN SELLERS &
   TOLL PLLC
1100 New York Avenue, NW
Suite 500 West
Washington, DC 20005

Christopher J. Cormier
COHEN MILSTEIN SELLERS &
   TOLL PLLC
2443 S. University Blvd., No. 232
Denver, CO 80210

*Interim Co-Lead Counsel for*
*Direct Purchaser Plaintiffs*

Mayra V. Tarantino
LITE DEPALMA GREENBERG, LLC
Two Gateway Center – 12th Floor
Newark, New Jersey 07102

Karen A. Confoy
FOX ROTHSCHILD LLP
997 Lenox Dr. – Bldg. 3
Lawrenceville, New Jersey 08648

*Interim Co-Liaison Counsel for*
*Direct Purchaser Plaintiffs*

Matthew A. White
Leslie E. John
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

Roberto A. Rivera-Soto
BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002

*Counsel for SIGMA Corporation and*
*SIGMA Piping Products Corporation*

64.  Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement.

IN WITNESS WHEREOF, the parties, through their respective counsel, have executed and delivered this Agreement as of the Execution Date.

Robert N. Kaplan
Richard J. Kilsheimer
Gregory K. Arenson
Elana Katcher
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022

Gary L. Specks
KAPLAN FOX & KILSHEIMER LLP
423 Sumac Road
Highland Park, IL 60035

*Interim Co-Lead Counsel for*
*Direct Purchaser Plaintiffs*

Kit A. Pierson
Robert A. Braun
COHEN MILSTEIN SELLERS &
    TOLL PLLC
1100 New York Avenue, NW
Suite 500 West
Washington, DC 20005

Christopher J. Cormier
COHEN MILSTEIN SELLERS &
    TOLL PLLC
2443 S. University Blvd., No. 232
Denver, CO 80210

*Interim Co-Lead Counsel for*
*Direct Purchaser Plaintiffs*

Mayra V. Tarantino
LITE DEPALMA GREENBERG, LLC
Two Gateway Center – 12th Floor
Newark, New Jersey 07102

Karen A. Confoy
FOX ROTHSCHILD LLP
997 Lenox Dr. – Bldg. 3
Lawrenceville, New Jersey 08648

*Interim Co-Liaison Counsel for*
*Direct Purchaser Plaintiffs*

Matthew A. White
Leslie E. John
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

Roberto A. Rivera-Soto
BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002

*Counsel for SIGMA Corporation and*
*SIGMA Piping Products Corporation*

21