## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE DUCTILE IRON PIPE FITTINGS ("DIPF") DIRECT PURCHASER ANTITRUST LITIGATION | Civ. No. 12-711 (AET)(LHG) |

### DECLARATION OF ROBERT N. KAPLAN IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH STAR PIPE PRODUCTS, LTD.

I, Robert N. Kaplan, declare:

1.      I am a partner in the law firm of Kaplan Fox & Kilsheimer LLP.  The Court has appointed me as one of two Interim Co-Lead Counsel in this case.  I submit this declaration in support of Direct Purchaser Plaintiffs' Motion for Preliminary Approval of the Settlement Agreement with Defendant Star Pipe Products, Ltd. ("Star"), dated July 2, 2015, Exhibit 1 hereto.  I have personal knowledge of the information set forth in this declaration.

2.      The settlement discussions with Star took place over the course of many months. In August 2014, initial settlement discussions occurred, including an in-person meeting between counsel on August 6, 2014.  These discussions were unsuccessful.

3.      These discussions were followed by a two-day mediation on January 27 and 28, 2015 before the Honorable Joel B. Rosen, U.S.M.J. (Ret.). Although the parties made progress, they continued to be too far apart to conclude a settlement.

4.      On May 22, 2015, a second mediation session was held before Judge Rosen at which the parties agreed on an amount and on preliminary terms of a settlement.

5.      Following additional negotiations regarding the terms of the settlement agreement, Co-Lead Counsel and counsel for Star signed the Settlement Agreement with an execution date of July 2, 2015.

6.      Both sides vigorously negotiated their respective positions on all material terms of the Settlement Agreement and the negotiations were non-collusive.

7.      In connection with these settlement negotiations, Plaintiffs' Co-Lead Counsel were informed of the facts concerning liability and damages issues, and the relative strengths and weaknesses of each side's litigation position. Star also provided Co-Lead Counsel with recent financial information.

8.      I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2nd day of July, 2015.

_____
Robert N. Kaplan

Exhibit 1

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

IN RE DUCTILE IRON PIPE FITTINGS ("DIPF") DIRECT PURCHASER ANTITRUST LITIGATION

Civ. No. 12-711 (AET)(LHG)

## SETTLEMENT AGREEMENT

This Settlement Agreement (also referred to as "Settlement" or "Agreement") is made and entered into this 2nd day of July, 2015 (the "Execution Date"), by and between Defendant, Star Pipe Products, Ltd. ("Star") and the Direct Purchaser Plaintiffs (also referred to as "Plaintiffs"), individually and on behalf of a Settlement Class of direct purchasers of ductile iron pipe fittings ("DIPF"), who are parties to litigation consolidated in *In re Ductile Iron Pipe Fittings ("DIPF") Direct Purchaser Antitrust Litigation,* Case No. 12-711 (AET)(LHG) (D. N.J.) (the "Action").

WHEREAS, Plaintiffs brought the Action alleging that Star participated in a conspiracy to raise, fix, maintain, or stabilize prices of DIPF in violation of Section 1 of the Sherman Act;

WHEREAS, Star denies each and every one of Plaintiffs' allegations and has asserted a number of defenses and a counterclaim to Plaintiffs' claims;

WHEREAS, Plaintiffs and Star agree that neither this Agreement nor any statement made in the negotiation thereof shall be deemed or construed to be an admission by or evidence against Star of any violation of any state or federal law or of any liability or wrongdoing by Star or evidence of the truth of any of the Plaintiffs' allegations or a waiver of any defenses thereto;

WHEREAS, arm's-length settlement negotiations have taken place between Interim Co-Lead Counsel (as defined below) and counsel for Star, including mediation before a Court-

1

appointed mediator, and this Settlement Agreement has been reached as a result of those negotiations;

WHEREAS, following disclosure of significant information about Star's financial position, Interim Co-Lead Counsel (as defined below) believe that the Settlement Amount (as defined below) to be paid by Star is fair and appropriate;

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the claims asserted in the Action, and have concluded that a settlement with Star according to the terms set forth below is fair, reasonable and adequate and in the best interest of Plaintiffs and the members of the Settlement Class (as defined below); and

WHEREAS, Star believes that it is not liable for the claims asserted and has good defenses to Plaintiffs' claims, but nevertheless has decided to enter into this Settlement Agreement in order to avoid further expense, inconvenience, and the distraction of and delays associated with burdensome and protracted litigation;

NOW, THEREFORE, in consideration of the agreements and releases set forth herein and other good and valuable consideration, and intending to be legally bound, Star and Plaintiffs agree that the Action be settled, compromised, and dismissed on the merits and with prejudice as to Star only, without costs to Plaintiffs, the Settlement Class, or Star except as provided herein, subject to the approval of the Court, on the following terms and conditions:

A.  **Definitions**

The following terms, as used in this Settlement Agreement, have the following meanings:

1.      "Court" means the United States District Court for the District of New Jersey.

2.      "Defendants" collectively means (a) McWane, Inc. and its divisions Clow Water Systems Co., Tyler Pipe Company and Tyler Union (collectively, "McWane"), (b) SIGMA

2

Corporation and its subsidiary SIGMA Piping Products Corporation (collectively, "SIGMA"), and (c) Star.

3.      "DIPF" means ductile iron pipe fittings as referenced in Plaintiffs' complaint to include products manufactured under standards set by the American National Standards Institute/American Waste Water Association Committee A21 standards ANSI/AWWA C110/A21.10 and C153/A21.53 or otherwise. Ductile iron pipe fittings are used to join ductile iron pipes, valves, and hydrants within water systems as well as to change, divide, or direct the flow of water.

4.      "Effective Date" means the first date by which all of the following have occurred: (a) neither Plaintiffs nor Star have availed themselves of any right to withdraw from or terminate the Settlement pursuant to Paragraphs 42 through 45, inclusive, herein; (b) the Court has entered a final order and judgment approving this Agreement under Rule 23(e) of the Federal Rules of Civil Procedure; (c) the Court has entered a final order and judgment approving the settlement agreement between Star and the plaintiff classes in *In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litig.*, Civ. No. 12-169 (AET)(LHG) (D.NJ.) (the "Indirect Purchaser Plaintiff Star Settlement"); (d) the Court has entered a final order and judgment dismissing all Releasees (as defined below) from the Action with prejudice and against Plaintiffs and as to all members of the Settlement Class and without costs; (e) the Court has entered a final order and judgment dismissing all Releasees from *In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litig.*, Civ. No. 12-169 (AET)(LHG) (D.N.J.) with prejudice; and (f) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of final judgments as described in clause (d) and (e) above has expired or, if appealed, approvals of this Agreement and the final judgments have been affirmed

3

in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review, by certiorari or otherwise; provided, however, a modification or reversal on appeal of any amount of fees or expenses awarded by the Court from the Settlement Fund shall not by itself prevent this Settlement Agreement from becoming final and effective if all other aspects of the final judgment have been affirmed.  Neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.

5.    "Escrow Account" is the account created to maintain the Settlement Fund (as defined below).

6.    "Final Approval" means that the approval of the Settlement Agreement by the Court has become final, either by exhaustion of any time for a Settlement Class Member who has properly and timely objected to the Settlement to appeal such approval, with no appeal being filed, or by completion of any appeals filed by Settlement Class Members which appeals have been resolved to uphold the Settlement.

7.    "Interim Co-Lead Counsel," as defined by the Court's May 14, 2012 order, means:

> Robert N. Kaplan
> Kaplan Fox & Kilsheimer LLP
> 850 Third Avenue, 14th Floor
> New York, NY 10022
>
> Kit A. Pierson
> Cohen Milstein Sellers & Toll PLLC
> 1100 New York Ave., N.W., Suite 500
> Washington, DC 20005

8.    "Non-Star Defendants" means Defendants other than Star.

4

9.     "Opt-Out Purchaser" means a member of the Settlement Class who has timely exercised its right to be excluded from the Settlement Class.

10.     "Opt-Out Purchases" means the dollar amount of purchases of DIPF directly from Star by each Opt-Out Purchaser during the period from January 11, 2008, through June 30, 2011.

11.     "Opt-Out Percentage" means the total dollar amount of Opt-Out Purchases by all Opt-Out Purchasers divided by the sum of the total dollar amount of purchases of DIPF directly from Star by all persons or entities included within the Settlement Class as defined in Paragraph 17, below, during the period from January 11, 2008, through June 30, 2011.

12.     "Plaintiffs" means City and County of Denver; Coastal Plumbing Supply Company Inc.; GCO, Inc. f/k/a Groeniger & Co.; HI Line Supply Co. Ltd.; John Hoadley & Sons, Inc.; Mountain States Supply LLC; Mountainland Supply LLC; and Public Works Supply Co., Inc.

13.     "Releasees" means Star and all of its current and former parents, subsidiaries, affiliates, partners, officers and directors, agents, servants, workmen, employees, and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors, purchasers, and assigns of each of the foregoing). "Releasees" does not include any Defendant in the Action other than Star, including any Non-Star Defendants' parents, subsidiaries or officers and directors or employees, except for persons who acted for Star at the relevant time.

14.     "Releasors" means all Plaintiffs and the Settlement Class Members, including all of their current and former parents and subsidiaries, affiliates, partners, officers and directors, agents, employees, and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors, purchasers, and assigns of each of the foregoing) of any claim that is subject to the Release described in Paragraphs 27, 28, and 29.

15. "Settlement" means the settlement of the Action contemplated by this Agreement.

16. "Settlement Amount" means $3,633,750.

17. "Settlement Class" means for purposes of settlement under this Agreement: all persons or entities in the United States that purchased DIPF directly from any Defendant at any time from January 11, 2008, through June 30, 2011. Excluded from the Settlement Class are Defendants and their parents, subsidiaries and affiliates (whether or not named as a Defendant in this Action), federal governmental entities, and instrumentalities of the federal government.

18. "Settlement Class Member" means a member of the Settlement Class who does not properly elect to be excluded from the Settlement Class.

19. "Settlement Fund" shall be the amount paid by Star in settlement of this Action pursuant to Paragraphs 32 and 33 of this Agreement and any income earned on amounts in the fund.

20. "Settling Parties" means Plaintiffs and Star.

**B.   Stipulation to Class Certification**

21. The parties to this Agreement hereby stipulate only for purposes of this Settlement that the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) are satisfied and, subject to Court approval, the Settlement Class defined in Paragraph 17 shall be certified only as to Star and only for settlement purposes.

**C.   Approval of this Settlement Agreement and Dismissal of the Action**

22. The Settling Parties agree to make reasonable efforts to finalize and effectuate this Agreement, including, but not limited to, seeking the Court's approval of procedures (including the giving of class notice and scheduling a final fairness hearing under Federal Rules of Civil Procedure 23(c) and (e)) to obtain Final Approval of the Settlement and the final dismissal with prejudice of the Action as to Star. The Settling Parties further agree not to do anything to

6

encourage any member of the Settlement Class to oppose or obstruct the Settlement or to opt out of the Settlement. Star shall encourage any Settlement Class Member, which Star understands may have agreed to request exclusion or entered into a tolling or similar agreement with any Defendant, not to request exclusion from the Settlement.

23.     Promptly after the Execution Date, Plaintiffs shall submit to the Court (a) a stipulation and proposed order staying all discovery and filing deadlines as to Star, in the form attached as Exhibit A, and (b) a motion for preliminary approval of the Settlement, appointing Interim Co-Lead Counsel as Settlement Class Counsel for purposes of this Agreement and certifying a Settlement Class for purposes of this Settlement.

24.     Notice to the Settlement Class shall be given as deemed sufficient by the Court. After submission to the Court of proposed forms of mail and publication notice, Interim Co-Lead Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Court's order: (a) provide Settlement Class Members with notice by first-class mail of the Settlement and the date of the hearing to consider the fairness, adequacy, and reasonableness of the Settlement (the "Fairness Hearing"); and (b) cause a summary notice of the Settlement and the Fairness Hearing to be published once in the national edition of the Wall Street Journal. Plaintiffs should, as practicable, combine dissemination of notice of this Agreement and the proposed certification of the Settlement Class with notice of one or more other settlement agreements reached with any Non-Star Defendants.

25.     Star shall cause notice of the Agreement to be served upon appropriate state and federal officials to the extent and in the manner required by the Class Action Fairness Act, 28 U.S.C. § 1715.

26.     Plaintiffs shall obtain entry of an order and final judgment as to Star:

(a)   approving the Settlement as fair, reasonable, and adequate within the meaning of Rule 23(e) of the Federal Rules of Civil Procedure and directing the consummation of the Settlement according to its terms;

(b)   directing, as to Star only, that the Action be dismissed with prejudice and, except as provided for herein, without costs;

(c)   reserving exclusive and continuing jurisdiction over the Settlement, including the administration and consummation of this Settlement, to the United States District Court for the District of New Jersey;

(d)   determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing entry of final judgment as to Star; and

(e)   approving the release of claims specified herein as binding and effective as to all Settlement Class Members and permanently barring and enjoining such class members from asserting any Released Claims (as defined in Paragraph 27).

## D.   Releases, Discharge, and Covenant Not to Sue

27.   Upon the Effective Date and in consideration of payment of the Settlement Amount into the Escrow Account, Releasors shall be deemed to and do completely remise, release, acquit, and forever discharge Releasees from any and all claims, demands, actions, suits, injuries, and causes of action, damages of any nature, whenever or however incurred (whether actual, punitive, treble, compensatory, or otherwise), including claims for costs, fees, expenses, penalties, and attorneys' fees, whether class or individual, known or unknown, or otherwise, that Releasors, or any of them, ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity against any of the Releasees, whether in law or equity or otherwise, arising out of or relating to any conduct, act, or omission of any of the Releasees from the beginning of the World until the Effective Date, concerning any of the conduct alleged or that could have been alleged in the Action against Star, including, without limitation, any claim under any federal or state antitrust, unfair competition, unfair practices, fraud, racketeering, price discrimination, unjust enrichment, unitary pricing or trade practice law

8

(the "Released Claims").  However, nothing herein shall release: (a) any claims based upon indirect purchases of DIPF brought by prospective members of any class of indirect purchasers (the "Indirect Purchaser Class"); (b) any claims based upon purchases of DIPF brought by the State of Indiana through its Attorney General; or (c) claims arising in the ordinary course of business for any product defect, product performance, or breach of warranty or for breach of contract based on product defect, product performance, or warranty, relating to DIPF.

28.     After the Effective Date, Releasors shall not seek, and are hereafter barred and enjoined from seeking, to recover from any Releasee based, in whole or in part, upon any of the Released Claims or conduct at issue in the Released Claims.  Released Claims do not include any claims arising out of the enforcement of this Agreement.

29.     In addition to the provisions of Paragraph 27 and 28 of this Settlement Agreement, Releasors hereby expressly waive and release upon the Effective Date any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, and Section 20-7-11 of the South Dakota Codified Laws, each of which provides that a general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor, and any similar provision, statute, regulation, rule, or principle of law or equity of any other state or applicable jurisdiction. The Releasors acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they know or believe to be true with respect to the subject matter of this Agreement, but that it is their intention to release fully, finally, and forever all Released Claims, and in furtherance of such intention, this release shall be and remain in effect notwithstanding the discovery or existence of any such additional or different facts.

30.     Upon the Effective Date, Star and the Releasees shall be deemed to have fully released Plaintiffs and their directors, officers, employees, and counsel from any claims relating to the institution or prosecution of the Action.

31.     Upon the Effective Date, Star and the Releasees shall be deemed to have fully released, acquitted, and forever discharged Plaintiff Public Works Supply Co., Inc., its directors, officers, employees and agents, from any liability based upon Star's counterclaims against Public Works Supply Co., Inc., as set forth in Star's "First Amended Answer to Direct Purchaser Plaintiffs' Second Consolidated Amended Complaint and Original Counterclaims against Plaintiff Public Works Supply Co.," filed in the Action on August 27, 2014. Star shall file with the Court a Stipulation of Dismissal of the counterclaims, with prejudice and without costs as to any party.

**E.     Payment**

32.     Star's total payment hereunder shall be $3,633,750. Within fifteen (15) business days from the Execution Date, Star shall pay or cause to be paid by wire transfer to the Escrow Account $150,000, which may be used only for notice and notice administration costs required under this Settlement Agreement. Plaintiffs shall to the extent reasonably feasible combine notice of this Agreement with the notice of settlement agreements reached with other Defendants and notice of class certification. In the event the Settlement Agreement is not approved or is disapproved, rescinded or otherwise fails to become effective or final, the $150,000 shall be returned to Star less actual, reasonable, and necessary and documented out of pocket fees or costs, paid or reasonably incurred, relating to Star's share of the provision of notice and notice administration. In the event that such costs as determined by Interim Co-Lead Counsel are less than $150,000, the remainder shall become part of the Settlement Fund. Star shall have no financial responsibility for any notice or administration costs in excess of $150,000.

33.     Star shall pay or cause to be paid by wire transfer the Settlement Amount of $3,633,750 in three equal installments by: (i) September 30, 2015 (reduced by the $150,000 separately paid or caused to be paid pursuant to Paragraph 32); (ii) July 30, 2016; and (iii) May 31, 2017.  Such sums shall be held in trust until Final Approval.  In the event that Star fails to make any of the payments when due and fails to cure such default within fifteen (15) business days, then the entire unpaid balance of the Settlement Amount shall be accelerated and become due and payable immediately.  In addition to such acceleration, interest shall be added to the entire remaining balance, calculated at the Federal Funds Rate plus 500 basis points, and running from the date of default to the date of payment of the remaining balance.

F.      **The Settlement Fund**

34.     The Settlement Fund is intended by the parties to this Agreement to be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. §1.468B-1, and to that end the parties to this Agreement shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment.  At the request of Star, a "relation back election" as described in Treas. Reg. § 1.468B-1(j) shall be made so as to enable the Settlement Fund to be treated as a qualified settlement fund from the earliest date possible, and the parties shall take all actions as may be necessary or appropriate to this end.

35.     To the extent practicable, the Settlement Fund shall be invested in United States Government Treasury obligations or deposited in a federally insured account or United States Treasury Money Market funds in an amount not exceeding $250,000 or the limits of federal insurance, whichever is greater.  All income earned on the Settlement Fund shall become and remain part of the Settlement Fund.

36.     Star shall not have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including,

11

but not limited to, the costs and expenses of such investment, distribution, and administration, except as expressly otherwise provided in this Agreement.

37.    As provided in paragraph 32, above, after preliminary approval of the Settlement, Interim Co-Lead Counsel may use a portion of the first installment paid into the Settlement Fund, not to exceed $150,000, to provide notice of the Settlement to Settlement Class Members and for notice administration, subject to any order from the Court.

38.    After the expiration of the time during which this Agreement could be rescinded for any of the reasons set forth in Paragraphs 42 through 45, Interim Co-Lead Counsel may at an appropriate time, determined in their sole discretion, submit a motion seeking approval of the payment of attorneys' fees and expenses from the Settlement Fund.  Star shall not oppose any motion by Interim Co-Lead Counsel seeking approval of payment, at or after Final Approval, of attorneys' fees and past, current, or future expenses from the Settlement Fund.

39.    The distribution of the Settlement Fund shall be administered pursuant to a plan of allocation (the "Plan of Allocation") proposed by Interim Co-Lead Counsel and subject to the approval of the Court.  Star shall have no participatory or approval rights with respect to the Plan of Allocation, and the Court's rejection of any Plan of Allocation shall not affect the validity or enforceability of this Settlement Agreement.

40.    Subject to Court approval, Plaintiffs and Interim Co-Lead Counsel shall be reimbursed and paid solely out of the Settlement Fund for all expenses and claims including, but not limited to, attorneys' fees and past, current, or future litigation expenses. Attorneys' fees and expenses awarded by the Court shall be payable from the Settlement Fund upon award, notwithstanding the existence of any timely-filed objections thereto, or potential for appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Interim Co-Lead

12

Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, if and when, as a result of any appeal or further proceedings on remand, or successful collateral attack, the fee or cost award is reduced or reversed. Star shall not be liable for any costs, fees, or expenses of any of Plaintiffs' respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court may be paid out of the Settlement Fund.

41.     The procedure for and the allowance or disallowance of any application for attorneys' fees and expenses are matters separate and apart from the Settlement and shall be requested to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. Any order or proceeding relating solely to an award of attorneys' fees and expenses, or any appeal from any order relating thereto, or any reversal or modification thereof, shall have no effect on the Settlement and shall not operate to, or be grounds to, terminate or cancel the Settlement or to affect or delay the finality of the final judgment approving the Settlement.

G.     **Rescission**

42.     If the Court refuses to approve this Agreement or any material part hereof; if Court approval is modified or set aside on appeal; if the Court does not enter a final judgment as provided in Paragraph 26 of this Agreement; or if after the Court enters the final judgment, appellate review is sought, and, on such review, such final judgment is not affirmed, then Star and Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety by written notice to the Court and to counsel for the other Settling Party filed and served within ten (10) business days of the event triggering the right to rescind. A modification or reversal on appeal of any amount of the Settlement Fund that the Court authorizes to be used to

13

pay Plaintiffs' litigation fees and expenses shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

43.     Star shall, in its sole discretion, have the option to terminate this Agreement upon the occurrence of the condition relating to Opt-Out Purchasers, set forth in a Confidential Side Letter executed between Interim Co-Lead Counsel and Star.

(a)     Within ten (10) calendar days after the end of the period established by the Court and set forth in the notice to request exclusion from the Settlement Class, Interim Co-Lead Counsel shall provide Star, through its counsel, with a written list of all Opt-Out Purchasers.

(b)     Within fifteen (15) calendar days of the delivery of the list described in Paragraph 43(a), Star shall provide to Interim Co-Lead Counsel the total amount of Opt-Out Purchases and the resulting Opt-Out Percentage for each Opt-Out Purchaser and supporting data for Opt-Out Purchases.

(c)     In the event Plaintiffs dispute the amount of Opt-Out Purchases or the resulting Opt-Out Percentage as described in Paragraph 43(b), Plaintiffs must notify counsel for Star within ten (10) calendar days from the delivery thereof.  Such notification shall include the basis for any dispute and any supporting data or documentation.  Star shall respond to such notification within ten (10) calendar days.  If, after good faith discussions about the dispute, the parties cannot agree on a resolution, they shall submit the dispute to arbitration for final resolution pursuant to Paragraph 54 of this Agreement.  Pending such final resolution, there shall be no further disbursements from the Settlement Fund.

(d)     In the event that the total Opt-Out Percentage is equal to or greater than the percentage set forth in the Confidential Side Letter, then Star shall have the right to rescind this Agreement by providing written notice to Interim Co-Lead Counsel.  Upon receipt of such

14

notice, Interim Co-Lead Counsel may within ten (10) calendar days file with the Court and provide Star's counsel with written notice of any challenge by Plaintiffs to such claim of entitlement to rescind this Agreement. In the event the parties are unable to agree upon Star's right to rescind this Agreement under this subparagraph, they shall submit any issue of disputed fact to arbitration pursuant to Paragraph 54 of this Agreement.

(e)    Plaintiffs may attempt to obtain rescission of any decision by an Opt-Out Purchaser to request exclusion prior to Star invoking its right to rescind under this Paragraph.

44.    If the Agreement is rescinded for any reason, then the balance of the Settlement Amount in the Settlement Fund will be returned to Star, less only actual, reasonable, and necessary and documented out of pocket fees or costs relating to Star's share of the provision of notice and notice administration, not to exceed $150,000.

45.    If the Agreement is rescinded for any reason, then the Settling Parties will be restored to their respective positions in the Action as of the Execution Date. In that event, this Agreement, and representations made in conjunction with it, may not be used in the Action or otherwise for any purpose. Star and Plaintiffs expressly reserve all rights if the Agreement does not become effective or if it is rescinded.

## H.    Limited Discovery and Cooperation

46.    Transaction Data. At Plaintiffs' request, Star shall make available for interview and for deposition at Star's counsel's offices in Houston, TX and subject to the limitations set forth below, one or more employees as reasonably necessary to answer questions or testify concerning Star's transaction, rebate and cost data and records, subject to any attorney-client or other privilege of Star. Any such examination by deposition shall not exceed the time limitations of Rule 30(d)(1) of the Federal Rules of Civil Procedure for the aggregate of questioning by counsel for Direct Purchaser Plaintiffs, counsel for the plaintiff class in *In re Ductile Iron Pipe*

15

*Fittings ("DIPF") Indirect Purchaser Antitrust Litig.*, Civ. No. 12-169 (AET)(LHG) (D.N.J.), counsel for the State of Indiana in *State of Indiana v. McWane, Inc., et al.*, No. 12-6667 (AET)(LHG) (D.N.J.), and counsel for any non-Star Defendant.

47.     Authentication of Documents.  Upon request by Plaintiffs, Star agrees to produce through affidavits or declarations, or one Rule 30(b)(6) deposition, if necessary, representatives, if any, qualified to establish for admission into evidence any of Star's documents, and, to the extent possible, any Star documents produced by any other party or non-party to the Action.

48.     Depositions.  Star shall not be required to have any of its present or former employees, shareholders, officers, or directors submit to any deposition more than 20 miles from the witness's home or usual place of business, except such witnesses still employed by Star may be deposed in Houston, TX.  Star shall be required to produce no more than six (6) fact witnesses for deposition.  Any such examination of each of those witnesses by deposition shall not exceed the time limitations of Rule 30(d)(1) of the Federal Rules of Civil Procedure for the aggregate of questioning by counsel for Direct Purchaser Plaintiffs, Indirect Purchaser Plaintiffs, Indiana, and any Non-Star Defendant, and will be subject to any attorney-client or other privilege of Star. These depositions are in addition to the separate examination on Transactional Data referred to in Paragraph 46 or for authentication of documents (if necessary) referred to in Paragraph 47 and, to the extent applicable, these depositions shall be subject to existing or future Court orders concerning depositions.

49.     Interviews.  Upon reasonable notice and promptly after the Execution Date, Star agrees to make available for interviews prior to the commencement of depositions in this matter, at mutually convenient times and at a location or locations of Star's choice within the United States and at Star's expense, a total of three (3) current or former directors, officers, or

16

employees whom Interim Co-Lead Counsel reasonably and in good faith believe to have knowledge regarding Plaintiffs' claims as alleged in the Action. Such interviews will be subject to any attorney-client or other privilege of Star. Such witnesses will provide truthful information and shall thereafter cooperate in the preparation of truthful declarations and/or affidavits if requested by Interim Co-Lead Counsel. Nothing herein shall require Star to pay any expense of Plaintiffs or Interim Co-Lead Counsel in connection with any interview provided for in this Paragraph 49. An "interview" for purposes of this Paragraph 49 shall last no longer than four hours, excluding reasonable breaks.

50.     <u>Star Optional Participation.</u>  Plaintiffs shall keep Star notified of all discovery and other proceedings in the Action so that Star can elect to monitor or participate, subject to the operative protective order, if Star so chooses. Star's election to monitor or participate, or not, shall not affect the stay of proceedings as to Star.

**I.**     **Taxes**

51.     Interim Co-Lead Counsel shall be solely responsible for filing all informational and other tax returns necessary to report any net taxable income earned by the Settlement Fund; shall file all informational and other tax returns necessary to report any income earned by the Settlement Fund; and shall be solely responsible for taking out of the Settlement Fund, as and when legally required, any tax payments, including interest and penalties due on income earned by the Settlement Fund. All taxes (including any interest and penalties) due with respect to the income earned by the Settlement Fund shall be paid from the Settlement Fund. Star shall have no responsibility to make any filings relating to the Settlement Fund and will have no responsibility to pay tax on any income earned by the Settlement Fund or to pay any taxes on the Settlement Fund unless the Settlement is not consummated or is rescinded and the Settlement Fund is returned to Star. In the event the Settlement is not consummated or is rescinded and any

funds including interest or other income are returned to Star, Star shall be responsible for the payment of taxes (including any interest or penalties), if any, on said interest or other income. Star makes no representations regarding, and shall not be responsible for, the tax consequences of any payments made pursuant to this Agreement to Interim Co-Lead Counsel or to any Settlement Class Member.

**J.      Miscellaneous**

52.      All rights of any Settlement Class Member against former, current, or future defendants or co-conspirators or any other person other than the Released Parties are specifically reserved by Plaintiffs and the Settlement Class Members. The sales of DIPF by Star shall, to the extent permitted or authorized by law, remain in the case against the other current or future defendants in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future defendants in the Action or other persons or entities other than the Released Parties.

53.      With the exception of matters expressly declared subject to arbitration in this Agreement, Star and Plaintiffs and each member of the Settlement Class hereby submit to the exclusive jurisdiction of the United States District Court for the District of New Jersey solely for the purpose of any suit, action, proceeding, or resolution of any dispute arising out of or relating to this Agreement or the applicability of this Agreement.

54.      Any factual controversy, claim or dispute arising out of, relating to, or in connection with the matters specifically designated to be submitted to arbitration under this Agreement shall be finally determined in arbitration before Hon. Joel Rosen as arbitrator, or such other arbitrator upon whom the parties shall mutually agree. Subject to the award of the arbitrator, the parties participating in an arbitration shall pay an equal share of the arbitrator's fees. The arbitrator may award recovery of all costs (including administrative fees, arbitrator's

fees, and court costs, but excluding attorneys' fees) to the prevailing party. Judgment upon any award rendered may be entered in the United States District Court for the District of New Jersey.

55.     Any press release or other public statement published or authorized by Star or its representatives regarding this Agreement or any of its terms shall be sent to Interim Co-Lead Counsel for their input and approval, which consent shall not be unreasonably withheld or unduly delayed.   Any press release or other public statement published or authorized by Plaintiffs or their representatives regarding this Agreement or any of its terms shall be sent to Star's counsel for their input and approval, which consent shall not be unreasonably withheld or unduly delayed.

56.     This Agreement, together with the Confidential Side Letter referenced in Paragraph 43, constitute the entire agreement among Plaintiffs and Star pertaining to the Settlement of the Action against Star.  This Agreement may be modified or amended only by a writing executed by Plaintiffs and Star.

57.     Neither this Agreement nor any negotiations or proceedings connected with it shall be deemed or construed to be an admission by any party or any Releasee of any wrongdoing or liability or evidence of any violation by Star of any federal or state statute or law either in the Action or in any other action or proceedings, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, except in a proceeding to interpret or enforce this Agreement. This Agreement represents the settlement of disputed claims and does not constitute, nor shall it be construed as, an admission of the correctness of any position asserted by any party, or an admission of liability or of any wrongdoing by any party, or as an admission of any strengths or weaknesses of the Plaintiffs' claims or Star's defenses.  Star specifically denies any wrongdoing or liability by any of the Releasees.

58.     This Agreement may be executed in counterparts by counsel for Plaintiffs and Star, and a facsimile or a .pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

59.     Neither Plaintiffs nor Star shall be considered the drafter of this Agreement or any of its provisions for the purpose of any statute, the common law, or rule of interpretation that would or might cause any provision of this Agreement to be construed against the drafter.

60.     The provisions of this Agreement shall, where possible, be interpreted in a manner to sustain their legality and enforceability.

61.     This Agreement shall be governed and interpreted according to the substantive laws of the State of New Jersey, without regard to its choice of law or conflict of law principles.

62.     Each party acknowledges that he, she, or it has been and is being fully advised by competent legal counsel of such party's own choice and fully understands the terms and conditions of this Agreement, and the meaning and import thereof, and that such party's execution of this Agreement is with the advice of such party's counsel and of such party's own free will.  Each party represents and warrants that it has sufficient information regarding the transaction and the other parties to reach an informed decision and has, independently and without relying upon the other parties, and based on such information as it has deemed appropriate, made its own decision to enter into this Agreement and was not fraudulently or otherwise wrongfully induced to enter into this Agreement.

63.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of his/her client(s).

20

IN WITNESS WHEREOF, Plaintiffs and Star, through their respective counsel, have executed and delivered this Agreement as of the Execution Date.

Robert N. Kaplan
Richard J. Kilsheimer
Gregory K. Arenson
Elana Katcher
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022

Gary L. Specks
KAPLAN FOX & KILSHEIMER LLP
423 Sumac Road
Highland Park, IL 60035

*Interim Co-Lead Counsel for*
*Direct Purchaser Plaintiffs*

Kit A. Pierson
Robert A. Braun
COHEN MILSTEIN SELLERS &
   TOLL PLLC
1100 New York Avenue, NW
Suite 500 West
Washington, DC 20005

Christopher J. Cormier
COHEN MILSTEIN SELLERS &
   TOLL PLLC
2443 S. University Blvd., No. 232
Denver, CO 80210

*Interim Co-Lead Counsel for*
*Direct Purchaser Plaintiffs*

Mayra V. Tarantino
LITE DEPALMA GREENBERG, LLC
Two Gateway Center – 12th Floor
Newark, New Jersey 07102

Karen A. Confoy
FOX ROTHSCHILD LLP
997 Lenox Dr. – Bldg. 3
Lawrenceville, New Jersey 08648

*Interim Co-Liaison Counsel for*
*Direct Purchaser Plaintiffs*

Gregory S.C. Huffman
Nicole L. Williams
THOMPSON & KNIGHT LLP
1722 Routh Street, Ste. 1500
Dallas, TX 75201

Joseph J. Fleischman
NORRIS McLAUGHLIN
   & MARCUS, P.A.
721 Route 202-206, Suite 200
P.O. Box 5933
Bridgewater, NJ 08807

*Counsel for Star Pipe Products, Ltd.*

21

IN WITNESS WHEREOF, Plaintiffs and Star, through their respective counsel, have executed and delivered this Agreement as of the Execution Date.

---

Robert N. Kaplan
Richard J. Kilsheimer
Gregory K. Arenson
Elana Katcher
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022

Gary L. Specks
KAPLAN FOX & KILSHEIMER LLP
423 Sumac Road
Highland Park, IL 60035

*Interim Co-Lead Counsel for
Direct Purchaser Plaintiffs*

---

Kit A. Pierson
Robert A. Braun
COHEN MILSTEIN SELLERS &
  TOLL PLLC
1100 New York Avenue, NW
Suite 500 West
Washington, DC 20005

Christopher J. Cormier
COHEN MILSTEIN SELLERS &
  TOLL PLLC
2443 S. University Blvd., No. 232
Denver, CO 80210

*Interim Co-Lead Counsel for
Direct Purchaser Plaintiffs*

---

Mayra V. Tarantino
LITE DEPALMA GREENBERG, LLC
Two Gateway Center – 12th Floor
Newark, New Jersey 07102

Karen A. Confoy
FOX ROTHSCHILD LLP
997 Lenox Dr. – Bldg. 3
Lawrenceville, New Jersey 08648

*Interim Co-Liaison Counsel for
Direct Purchaser Plaintiffs*

---

Gregory S.C. Huffman
Nicole L. Williams
THOMPSON & KNIGHT LLP
1722 Routh Street, Ste. 1500
Dallas, TX 75201

Joseph J. Fleischman
NORRIS McLAUGHLIN
  & MARCUS, P.A.
721 Route 202-206, Suite 200
P.O. Box 5933
Bridgewater, NJ 08807

*Counsel for Star Pipe Products, Ltd.*

21

IN WITNESS WHEREOF, Plaintiffs and Star, through their respective counsel, have executed and delivered this Agreement as of the Execution Date.

Robert N. Kaplan
Richard J. Kilsheimer
Gregory K. Arenson
Elana Katcher
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022

Gary L. Specks
KAPLAN FOX & KILSHEIMER LLP
423 Sumac Road
Highland Park, IL 60035

*Interim Co-Lead Counsel for
Direct Purchaser Plaintiffs*

Kit A. Pierson
Robert A. Braun
COHEN MILSTEIN SELLERS &
   TOLL PLLC
1100 New York Avenue, NW
Suite 500 West
Washington, DC 20005

Christopher J. Cormier
COHEN MILSTEIN SELLERS &
   TOLL PLLC
2443 S. University Blvd., No. 232
Denver, CO 80210

*Interim Co-Lead Counsel for
Direct Purchaser Plaintiffs*

Mayra V. Tarantino
LITE DEPALMA GREENBERG, LLC
Two Gateway Center – 12th Floor
Newark, New Jersey 07102

Karen A. Confoy
FOX ROTHSCHILD LLP
997 Lenox Dr. – Bldg. 3
Lawrenceville, New Jersey 08648

*Interim Co-Liaison Counsel for
Direct Purchaser Plaintiffs*

Gregory S.C. Huffman
Nicole L. Williams
THOMPSON & KNIGHT LLP
1722 Routh Street, Ste. 1500
Dallas, TX 75201

Joseph J. Fleischman
NORRIS McLAUGHLIN
   & MARCUS, P.A.
721 Route 202-206, Suite 200
P.O. Box 5933
Bridgewater, NJ 08807

*Counsel for Star Pipe Products, Ltd.*

21

Exhibit A

# IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE DUCTILE IRON PIPE FITTINGS ("DIPF") DIRECT PURCHASER ANTITRUST LITIGATION | Civ. No. 12-711 (AET)(LHG) |
| | STIPULATION AND PROPOSED ORDER |

WHEREAS, Plaintiffs in the Direct Purchaser litigation ("Plaintiffs") and Defendant Star Pipe Products, Ltd. ("Star") have made and entered into a settlement agreement ("Settlement Agreement") dated as of July 2, 2015; and,

WHEREAS, Plaintiffs are preparing and will promptly submit to the Court a motion ("Preliminary Approval Motion") for: (a) certification of a class for settlement purposes; and (b) preliminary approval of the Settlement Agreement;

NOW, THEREFORE, this 2nd day of July, 2015, it is hereby STIPULATED AND AGREED, by and between Plaintiffs and Star, that:

1. Until further order of the Court, all case deadlines applicable to Star in the matter captioned *In re Ductile Iron Pipe Fittings Direct Purchaser Antitrust Litigation*, docketed at No. 2:12-cv-0711-AET-LHG (the "Action"), including any deadlines that may yet be set, are stayed; and

2. This stipulation shall not affect any case deadlines pertaining to parties other than Star in the Action.

_Richard J. Kilsheimer_ (signature)

Robert N. Kaplan
Richard J. Kilsheimer
Gregory K. Arenson
Elana Katcher
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022

Gary L. Specks
KAPLAN FOX & KILSHEIMER LLP
423 Sumac Road
Highland Park, IL 60035

*Interim Co-Lead Counsel for*
*Direct Purchaser Plaintiffs*

Kit A. Pierson
Robert A. Braun
COHEN MILSTEIN SELLERS &
   TOLL PLLC
1100 New York Avenue, NW
Suite 500 West
Washington, DC 20005

Christopher J. Cormier
COHEN MILSTEIN SELLERS &
   TOLL PLLC
2443 S. University Blvd., No. 232
Denver, CO 80210

*Interim Co-Lead Counsel for*
*Direct Purchaser Plaintiffs*

Mayra V. Tarantino
LITE DEPALMA GREENBERG, LLC
Two Gateway Center – 12th Floor
Newark, New Jersey 07102

Karen A. Confoy
FOX ROTHSCHILD LLP
997 Lenox Dr. – Bldg. 3
Lawrenceville, New Jersey 08648

*Interim Co-Liaison Counsel for*
*Direct Purchaser Plaintiffs*

Gregory S.C. Huffman
Nicole L. Williams
THOMPSON & KNIGHT LLP
1722 Routh Street, Ste. 1500
Dallas, TX 75201

Joseph J. Fleischman
NORRIS McLAUGHLIN
   & MARCUS, P.A.
721 Route 202-206, Suite 200
P.O. Box 5933
Bridgewater, NJ 08807

*Counsel for Star Pipe Products, Ltd.*

**SO ORDERED**, this ___ day of July, 2015.

Honorable Anne E. Thompson
United States District Judge

Robert N. Kaplan
Richard J. Kilsheimer
Gregory K. Arenson
Elana Katcher
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY  10022

Gary L. Specks
KAPLAN FOX & KILSHEIMER LLP
423 Sumac Road
Highland Park, IL 60035

*Interim Co-Lead Counsel for
Direct Purchaser Plaintiffs*

Kit A. Pierson
Robert A. Braun
COHEN MILSTEIN SELLERS &
   TOLL PLLC
1100 New York Avenue, NW
Suite 500 West
Washington, DC  20005

Christopher J. Cormier
COHEN MILSTEIN SELLERS &
   TOLL PLLC
2443 S. University Blvd., No. 232
Denver, CO  80210

*Interim Co-Lead Counsel for
Direct Purchaser Plaintiffs*

Mayra V. Tarantino
LITE DEPALMA GREENBERG, LLC
Two Gateway Center – 12th Floor
Newark, New Jersey 07102

Karen A. Confoy
FOX ROTHSCHILD LLP
997 Lenox Dr. – Bldg. 3
Lawrenceville, New Jersey 08648

*Interim Co-Liaison Counsel for
Direct Purchaser Plaintiffs*

Gregory S.C. Huffman
Nicole L. Williams
THOMPSON & KNIGHT LLP
1722 Routh Street, Ste. 1500
Dallas, TX  75201

Joseph J. Fleischman
NORRIS McLAUGHLIN
   & MARCUS, P.A.
721 Route 202-206, Suite 200
P.O. Box 5933
Bridgewater, NJ 08807

*Counsel for Star Pipe Products, Ltd.*

**SO ORDERED**, this ___ day of July, 2015.

Honorable Anne E. Thompson
United States District Judge

Robert N. Kaplan
Richard J. Kilsheimer
Gregory K. Arenson
Elana Katcher
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022

Gary L. Specks
KAPLAN FOX & KILSHEIMER LLP
423 Sumac Road
Highland Park, IL 60035

*Interim Co-Lead Counsel for*
*Direct Purchaser Plaintiffs*

Kit A. Pierson
Robert A. Braun
COHEN MILSTEIN SELLERS &
   TOLL PLLC
1100 New York Avenue, NW
Suite 500 West
Washington, DC 20005

Christopher J. Cormier
COHEN MILSTEIN SELLERS &
   TOLL PLLC
2443 S. University Blvd., No. 232
Denver, CO 80210

*Interim Co-Lead Counsel for*
*Direct Purchaser Plaintiffs*


Mayra V. Tarantino
LITE DEPALMA GREENBERG, LLC
Two Gateway Center – 12th Floor
Newark, New Jersey 07102

Karen A. Confoy
FOX ROTHSCHILD LLP
997 Lenox Dr. – Bldg. 3
Lawrenceville, New Jersey 08648

*Interim Co-Liaison Counsel for*
*Direct Purchaser Plaintiffs*

Gregory S.C. Huffman
Nicole L. Williams
THOMPSON & KNIGHT LLP
1722 Routh Street, Ste. 1500
Dallas, TX 75201

Joseph J. Fleischman
NORRIS McLAUGHLIN
   & MARCUS, P.A.
721 Route 202-206, Suite 200
P.O. Box 5933
Bridgewater, NJ 08807

*Counsel for Star Pipe Products, Ltd.*


**SO ORDERED**, this __ day of July, 2015.


Honorable Anne E. Thompson
United States District Judge