LITE DEPALMA GREENBERG, LLC
Mayra V. Tarantino
570 Broad Street, Suite 1201
Newark, NJ 07102
(973) 623-3000
*Interim Co-Liaison Counsel for Direct*
*Purchaser Plaintiffs*

FOX ROTHSCHILD LLP
Karen A. Confoy
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, NJ 08648-2311
 (609) 896-3600
*Interim Co-Liaison Counsel for*
*Direct Purchaser Plaintiffs*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE DUCTILE IRON PIPE FITTINGS ("DIPF") DIRECT PURCHASER ANTITRUST LITIGATION | Civ. No. 12-711 (AET)(LHG) |

**MEMORANDUM OF LAW IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH DEFENDANT STAR PIPE PRODUCTS, LTD.**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................iv

I.     INTRODUCTION ............................................................................1

II.    BACKGROUND ...........................................................................2

   A. The Litigation ........................................................................2

   B. Settlement Negotiations.........................................................2

      1. The Settlement Class................................................3

      2. The Settlement Fund ...............................................4

      3. The Cooperation Provisions ...................................5

         (a) Interviews ...............................................5

         (b) Depositions..............................................5

         (c) Transaction Data .....................................5

         (d) Documents................................................5

      4. The Release .............................................................6

      5. Rescission Based on Opt-Outs ................................7

III.   ARGUMENT...............................................................................8

   A.  The Settlement of Complex Litigation is Favored....................8

   B.  The Proposed Settlement Exceeds the Standards for Preliminary
       Approval....................................................................................9

1. The Proposed Settlement is the Result of Arm's Length Negotiations Conducted by Highly Experienced Counsel ...............10

2. The Proposed Settlement Falls Within the Range of Possible Approval............................................................................................12

C. The Proposed Settlement Class Should be Certified Pursuant to Rule 23 ...................................................................................................13

1. The Proposed Settlement Class Meets the Requirements of Rule (23)a ........................................................................................14

   a. The Settlement Class Is So Numerous That It is Impracticable to Bring All Class Members Before the Court .............................14

   b. Plaintiffs and Settlement Class Share Common Legal and Factual Questions.............................................................................15

   c. Plaintiffs' Claims are Typical of the Claims of the Members of the Settlement Class ...............................................................17

   d. Interim Co-Lead Counsel, Liaison Counsel and Representative Plaintiffs Will Fairly and Adequately Protect the Interests of the Class ...................................................................................18

2. The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)....................................................................................19

   a. Common Questions of Law and Fact Predominate .....................19

   b. A Class Action is the Superior Method to Adjudicate these claims ........................................................................................21

496699.1

IV.    REQUESTS TO APPOINT GARDEN CITY GROUP, LLC AS
CLAIMS ADMINISTRATOR AND CITIBANK AS
ESCROW AGENT ....................................................................22

V.    NOTICE TO THE CLASS ........................................................23

VI.    PRELIMINARY APPROVAL ORDER ...................................24

CONCLUSION .......................................................................24

496699.1

## TABLE OF AUTHORITIES

Page(s)

*Amchem Prods. Inc. v. Windsor*,
   521 U.S. 591 (1997) ..............................................................................19, 20, 22

*Baby Neal v. Casey*,
   43 F.3d 48 (3d Cir. 1994) ...........................................................................17

*Bogosian v. Gulf Oil Corp.*,
   561 F.2d 434 (3d Cir. 1977) .......................................................................18

*Comcast Corp. v. Behrand*,
   133 S. Ct. 1426 (2013) ................................................................................21

*Curiale v. Lenox Grp. Inc.*,
   No. 07-1432, 2008 WL 4899474 (E.D. Pa. 2008) ..................................10

*Glaberson v. Comcast Corp.*,
   Civ. A. No. 03-6604, 2014 WL 7008539 (E.D. Pa. Dec. 12, 2014) ................1, 10

*In re Auto. Refinishing Paint Antitrust Litig.*,
   MDL No. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004) .............................9

*In re Buspirone Patent Litig.*,
   210 F.R.D. 43 (S.D.N.Y. 2002).................................................................20

*In re Chambers Dev. Sec. Litig.*,
   912 F. Supp. 822 (W.D. Pa. 1995) ......................................................13

*In re Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010) ...............................................................8, 9

*In re Ins. Brokerage Antitrust Litig.*,
   Case No. 04-6184, 2013 WL 3956378 (D.N.J. Aug. 1, 2013).....................9, 22

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3d Cir. 2008) ...............................................................20

iv

*In re Global Crossing Sec. and Erisa Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004)...........................................................................15

*In re K-Dur Antitrust Litig.*,
  No. 01-1652, 2008 WL 2699390 (D.N.J. Apr. 14, 2008) ......................................16

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 631 (E.D. Pa. 2003) ....................................................................12

*In re Mercedes Benz Antitrust Litig.*,
  213 F.R.D. 180 (D.N.J. 2003) ...............................................................................20

*In re Microcrystalline Cellulose Antitrust Litig.*,
  218 F.R.D. 79 (E.D. Pa. 2003) ..............................................................................15

*In re McWane, Inc. and Star Pipe Products Ltd.*, FTC
  Dkt. No. 9351, 2014 WL 556261 (FTC Jan. 30, 2014) .........................................12

*In re Mut. Funds Inv. Litig.*,
  No.04-md-15861, 2010 WL 2342413 (D.Md. May 19, 2010) ...............................7

*In re NASDAQ Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998)...........................................................................13

*In re OSB Antitrust Litig.*,
  2007 WL 2253418 (E.D. Pa. Aug. 3, 2007)..........................................................16

*In re Pet Food Prods. Liability Litig.*,
  No. 07-2867, 2008 WL 4937632 (D.N.J. Nov. 18, 2008) .....................................13

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
  962 F. Supp. 450 (D. N.J. 1997) .............................................................................9

*In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998)...................................................................................21

*In re Scrap Metal Antitrust Litig.*,
  527 F.3d 517 (6th Cir. 2008).................................................................................20

v

*Johnston v. HBO Film Mgmt., Inc.*,
   265 F.3d 178 (3d Cir. 2001) .................................................................15

*Jones v. Commerce Bancorp, Inc.*,
   No. 05–5600, 2007 WL 2085357 (D.N.J.2007)...................................10

*McWane, Inc. v. F.T.C.*,
   783 F.3d 814 (11th Cir. 2015)............................................................12

*Marsden v. Select Med. Corp.*,
   246 F.R.D. 480 (E.D. Pa. 2007) .........................................................15

*Mazon v. Wells Fargo Bank, N.A.*,
   Civ. No. 10-700, 2011 WL 6257149 (D. N.J. Dec. 14, 2011) ..............10

*Mylan Pharms., Inc. v. Warner Chilcott Public Ltd.*,
   Civ. No. 12-3824, 2014 WL 631031 (E.D. Pa. Feb. 18, 2014) ............10

*Stewart v. Abraham*,
   275 F.3d 220 (3d Cir. 2001) ...............................................................14

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ......................................................................15

*Weisfeld v. Sun Chem. Corp.*,
   210 F.R.D. 136 (D.N.J. 2002) ............................................................16

*Weissman v. Philip C. Gutworth, P.A.*,
   Civ. No. 2:14-cv-00666, 2015 WL 333465 (D. N.J. Jan. 23, 2015)................9, 10

*Weseley v. Spear*,
   711 F. Supp. 713 (E.D.N.Y. 1989).....................................................13

496699.1

Rule 23(a)......................................................................................13, 17, 18

Rule 23(a)(2).............................................................................................17

Rule 23(b)...........................................................................................13, 19

Rule 23(b)(3).............................................................................................19

Rule 23(e)...................................................................................................1

Fed. R. Civ. P. 23(a)(1)............................................................................14

Fed. R. Civ. P. 23(a)(2)............................................................................15

Fed. R. Civ. P. 23(a)(3)............................................................................17

Fed. R. Civ. P. 23(a)(4)......................................................................18, 19

Fed. R. Civ. P. 23(b)(3)......................................................................19, 22

*Manual for Complex Litigation* (Fourth) § 21.63 (2004) ..........................9

NEWBERG ON CLASS ACTIONS, § 18.26, 86-89 (4th ed. 2002)................20

496699.1

## I.   __INTRODUCTION__

Direct Purchaser Plaintiffs seek preliminary approval under Federal Rule of Civil Procedure 23(e) of a settlement with Star Pipe Products, Ltd. ("Star"). This settlement provides for a payment of $3,633,750 (the "Settlement Amount"), including up to $150,000 to be used to pay notice and administration costs. In addition, Star has agreed to provide cooperation with respect to employee interviews and depositions, authentication of documents, and clarification of its transaction, cost and rebate data, which will aid Direct Purchaser Plaintiffs in the litigation against the remaining defendant, McWane, Inc. and its divisions Clow Water Systems, Tyler Pipe Company and Tyler Union (collectively, "McWane").[1]

At the preliminary approval stage, the Court only determines if the settlement is "within the range of settlements worthy of final approval as fair, reasonable, and adequate." *Glaberson v. Comcast Corp.*, Civ. A. No. 03-6604, 2014 WL 7008539, at *5 (E.D. Pa. Dec. 12, 2014). As detailed below, the settlement is well within the range for possible approval and should be preliminarily approved by this Court under Rule 23(e).

---

[1]   Defendant Sigma entered into a settlement agreement with Direct Purchaser Plaintiffs on May 21, 2015, and that settlement was preliminarily approved on June 9, 2015.

1

## II.   BACKGROUND

### A.   The Litigation

This case is brought on behalf of a putative class of direct purchasers of ductile iron pipe fittings ("DIPF") from Defendants McWane, Star, and SIGMA Corporation and its owned subsidiary SIGMA Piping Products Corporation (collectively, "SIGMA"). The Second Consolidated Amended Complaint ("CAC") challenges two unlawful conspiracies: (a) a price-fixing conspiracy between McWane, SIGMA and Star (who collectively sell more than 90% of DIPF in the United States) from at least January 2008 through June 2011; and (b) a conspiracy between McWane and SIGMA to monopolize and fix prices in the domestic DIPF Market from September 17, 2009 until at least January 3, 2012. Plaintiffs also challenge actions by McWane to monopolize the domestic DIPF Market from at least February 2009 to the present. Star is only a defendant in the price-fixing conspiracy.

### B.   Settlement Negotiations

Direct Purchaser Plaintiffs' Interim Co-Lead Counsel and Star's counsel engaged in extensive arm's length negotiations over many months to reach the proposed settlement. *See* Declaration of Robert N. Kaplan in Support of Direct Purchaser Plaintiffs' Motion for Preliminary Approval of Settlement With Defendant Star Pipe Products, Ltd., sworn to July 2, 2015 ("Kaplan Decl."). Interim Co-Lead Counsel and Star's counsel, both highly experienced and capable,

vigorously advocated their respective clients' positions in the settlement negotiations. Kaplan Decl. ¶ 6.

Preliminary settlement discussions were held in August 2014, but the parties were too far apart in their positions for progress to be made. Kaplan Decl. ¶ 2.

On January 27 and 28, 2015, the parties participated in a Court-ordered mediation before the Honorable Joel B. Rosen, U.S.M.J. (Ret.), a highly respected and experienced mediator. *Id.* ¶ 3. While the parties made some progress, an agreement was not concluded until a second mediation session was held on May 22, 2015.

Both sides vigorously negotiated their respective positions on all material terms of the Settlement Agreement, and the negotiations were non-collusive. *Id.* ¶ 6. In connection with these settlement negotiations, Direct Purchaser Plaintiffs' Interim Co-Lead counsel were informed of the facts concerning liability and damages issues, Star's financial position, and the relative strengths and weaknesses of each side's litigation position. *Id.* ¶ 7.

The Settlement Agreement, attached to the Kaplan Declaration as Exhibit 1, includes the following material terms:

### 1.    The Settlement Class

The Settlement Agreement defines the Settlement Class as follows:

[A]ll persons or entities in the United States that purchased DIPF directly from any Defendant at any time from January 11, 2008, through June 30,

2011.  Excluded from the Settlement Class are Defendants and their parents, subsidiaries and affiliates (whether or not named as a Defendant in this Action), federal governmental entities, and instrumentalities of the federal government.

Settlement Agreement, ¶ 17.[2]

## 2. The Settlement Fund

Pursuant to the terms of the Settlement Agreement, Star will pay the Settlement Amount into an escrow account in three equal installments on the following schedule:

(i)     On or before September 30, 2015 (reduced by the $150,000 separately paid for notice and notice administration costs);

(ii)    On or before July 30, 2016; and

(iii)   On or before May 31, 2017.

*Id.* ¶ 33.

All income earned on the Settlement Fund shall become and remain part of the Settlement Fund. *Id.* ¶ 35. The Settlement Agreement provides that Star will also pay $150,000 within 15 business days of the execution of the Settlement Agreement to be used for all reasonable costs of disseminating notice of the settlement, including the cost of settlement administration. *Id.* ¶ 32.

---

[2]     As defined in the Settlement Agreement, the term "Defendants" collectively means (a) McWane, (b) SIGMA, and (c) Star. *See* Settlement Agreement, ¶ 2.

### 3.      The Cooperation Provisions

Star has agreed to provide cooperation to the Direct Purchaser Plaintiffs that will aid in the prosecution of the claims against McWane. The full extent of this cooperation, set forth in more detail in Paragraphs 46 through 49 of the Settlement Agreement, can be summarized as follows:

#### (a)      Interviews

Star has agreed to produce up to three fact witnesses for interviews at mutually convenient times and at a location or locations of Star's choice within the United States and at Star's expense. *Id.* ¶ 49.

#### (b)      Depositions

Star has agreed to produce up to six fact witnesses for deposition, not to be held more than 20 miles from the witness's home or usual place of business, except if held in Houston. *Id.* ¶ 48.

#### (c)      Transaction Data

Star has agreed to make available for interview and deposition one or more employees as necessary to answer questions or testify concerning Star's transaction, rebate and cost data and records. *Id.* ¶ 46.

#### (d)      Documents

Star has agreed to produce, through affidavits or declarations, or, if necessary, through deposition, representatives who are qualified to establish admissibility into evidence of any information or documents they have provided in

496699.1

this action, and, to the extent possible, any Star documents produced by any other party or non-party to the action. *Id.* ¶ 47.

### 4.    The Release

In exchange for Star's consideration, the Releasors shall be deemed to and do completely remise, release, acquit, and forever discharge Releasees from any and all claims, demands, actions, suits, injuries, and cause of action, damages of any nature, whenever or however incurred (whether actual, punitive, treble, compensatory, or otherwise), including claims for costs, fees, expenses, penalties, and attorneys' fees, whether class or individual, known or unknown, or otherwise, that Releasors, or any of them, ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity against any of the Releasees, whether in law or equity or otherwise, arising out of or relating to any conduct, act, or omission of any of the Releasees from the beginning of the World until the Effective Date, concerning any of the conduct alleged or that could have been alleged in the Action against Star, including, without limitation, any claim whether under any federal or state antitrust, unfair competition, unfair practices, price discrimination, unjust enrichment, unitary pricing or trade practice law.[3]  *Id.* ¶ 27.  However, there is no release of any claims (a) made with respect to any indirect purchase of DIPF; (b) made by the State of Indiana through its

---

[3]    The full language of the release provisions is found at ¶¶ 27-30 of the Settlement Agreement.

Attorney General; or (b) arising in the ordinary course of business for any product defect, breach of contract, product performance, or warranty claims relating to DIPF. *Id.*

### 5.     Rescission Based on Opt-Outs

The Settlement Agreement permits Star to rescind the agreement based upon the level of opt-outs. Specifically, if the dollar amount of purchases by Class Members who elect to opt-out of the Settlement Class exceeds a threshold amount set forth in a separate side letter agreement between the parties, Star has the option to rescind the agreement. *Id.* ¶ 43.[4] Within ten calendar days after the date set by the Court as the date by which Settlement Class members must elect whether to remain in the Settlement Class or opt out, Interim Co-Lead Counsel will provide Star with a list of all potential Settlement Class members who have opted out. *Id.* ¶ 43(a).   Within fifteen calendar days thereafter, Star will provide to Interim Co-Lead Counsel the total amount of Opt-Out Purchases and the resulting Opt-Out

---

[4]     The Opt-Out Percentage is reflected in a confidential letter between the parties and can be made available to the Court if requested. *See In re Mut. Funds Inv. Litig.,* No.04-md-15861, 2010 WL 2342413 (D.Md. May 19, 2010) (confidential side letter reflecting terms of opt-out rescission agreement). The percentage amount of purchases represented by Opt-Out Plaintiffs that triggers the right to rescind the agreement is often referred to as a "blow percentage." The exact blow percentage is not relevant to Class members' decisions as to whether to remain in or exclude themselves from the Settlement Class. Rather, what is relevant is the amount being paid, the cooperation terms, the release terms, and the fact that the sales by Star remain in the case.

Percentage for each Opt-Out Purchaser and supporting data for Opt-Out Purchases. *Id.* ¶ 43(b). If the Opt-Out Percentage equals or exceeds the amount agreed to by the parties, then Star will have the option to rescind the Settlement Agreement within ten business days after the Opt-Out Percentage is provided or within ten business days after resolution of any dispute as to the Opt-Out Purchases or Opt-Out Percentage. *Id.* ¶ 43(d). Plaintiffs may attempt to obtain rescission of any decision by an Opt-Out Purchaser to request exclusion prior to Star invoking its right to rescind. *Id.* ¶ 43(e).

## III.   ARGUMENT

### A.   The Settlement of Complex Litigation Is Favored

Plaintiffs and Star have reached an agreement that maximizes Direct Purchaser Plaintiffs' recovery and provides cooperation from Star in the prosecution of claims against the sole remaining defendant in this litigation, McWane. Direct Purchaser Plaintiffs have avoided the potential risks inherent in complex antitrust class action litigation and secured significant benefits for the Settlement Class. Further, the Court should be mindful of the "strong presumption in favor of voluntary settlement agreements," which "lighten the increasing load of litigation faced by the federal courts" and allow the parties to "gain significantly from avoiding the costs and risks of a lengthy and complex trial." *In re Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010). "This presumption is

especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Ehrheart*, 609 F.3d at 594 (internal citation omitted); *see also In re Ins. Brokerage Antitrust Litig.*, Case No. 04-6184, 2013 WL 3956378 (D.N.J. Aug. 1, 2013) (holding that "the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation").

## B.   The Proposed Settlement Exceeds the Standards for Preliminary Approval

When parties to a class action seek to settle, they must proceed before the court in two steps – first, they must seek preliminary approval of the proposed settlement as well as certification of the proposed settlement class, and then, should such preliminary approval and settlement class certification be granted, they must provide notice to the settlement class and appear at a fairness hearing, after which the court may grant final approval to the settlement. *See Manual for Complex Litigation* (Fourth) § 21.63 (2004); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 562 (D. N.J. 1997); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807, at *1 (E.D. Pa. May 11, 2004).

"The court's preliminary approval is not binding and is granted unless the proposed settlement is obviously deficient." *Weissman v. Philip C. Gutworth, P.A.*,

Civ. No. 2:14-cv-00666, 2015 WL 333465, at *2 (D. N.J. Jan. 23, 2015); *see also Jones v. Commerce Bancorp, Inc.*, No. 05–5600, 2007 WL 2085357, at *2 (D.N.J.2007). In determining whether preliminary approval should be granted, the Court is required to determine only whether "the proposed settlement disclose[s] grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *Mylan Pharms., Inc. v. Warner Chilcott Public Ltd.*, Civ. No. 12-3824, 2014 WL 631031, at *4 (E.D. Pa. Feb. 18, 2014); *see also Mazon v. Wells Fargo Bank, N.A.*, Civ. No. 10-700, 2011 WL 6257149, at *1 (D. N.J. Dec. 14, 2011). The "analysis often focuses on whether the settlement is the product of arm's-length negotiations." *Curiale v. Lenox Grp. Inc.*, No. 07-1432, 2008 WL 4899474, *4 (E.D. Pa. 2008).

### 1.   The Proposed Settlement Is the Result of Arm's Length Negotiations Conducted by Highly Experienced Counsel.

The process that led to this proposed settlement was fairly conducted with the aid of an experienced mediator by highly-qualified counsel who sought to obtain the best possible result for their clients and the Settlement Class. When experienced counsel engage in an arm's-length negotiation that results in a settlement, courts find that the settlement is entitled to a presumption of fairness. *See, e.g., Weissman*, 2015 WL 333465, at *2; *Glaberson*, 2014 WL 7008539, at *4

(a settlement is presumed to be fair "when the negotiations were at arm's length, there was sufficient discovery, and the proponents of the settlement are experienced in similar litigation."). The process that led to this settlement confirms that the initial presumption of fairness is correct.

As set forth in their motions for appointment as Interim Co-Lead Counsel (ECF Nos. 15 and 16), Direct Purchaser Plaintiffs' counsel are highly capable and have the requisite qualifications and experience to handle this litigation. Moreover, counsel engaged in settlement negotiations with the utmost good faith and due diligence. In this case, settlement negotiations involved numerous telephone conferences, face-to-face meetings, and emails. *See* Kaplan Decl. ¶¶ 2-7. Although depositions have not yet commenced in this litigation, by the time negotiations with Star began, Interim Co-Lead Counsel had the benefit of a fully developed record from the underlying Federal Trade Commission ("FTC") proceeding to assist in their evaluation of the strengths and weaknesses of the case against Star. In particular, Interim Co-Lead Counsel reviewed well over 450,000 documents produced by the defendants, including those documents produced during the related FTC investigation into Defendants' alleged unlawful conduct, as well as additional documents produced for the first time in this litigation. Interim Co-Lead Counsel also have reviewed the voluminous record of the related FTC proceedings, which included the transcripts and exhibits of a full trial against Defendant

11

McWane, and produced a 464-page Initial Decision by Administrative Law Judge Chappell. Finally, Co-Lead Counsel were provided with information concerning Star's financial condition.

In addition, by the time negotiations commenced, the FTC Administrative Law Judge had found, and the FTC subsequently affirmed, that McWane had engaged in an "unlawful exclusive dealing policy to maintain its monopoly power in the domestic fittings market." *In re McWane, Inc. and Star Pipe Products Ltd.*, FTC Dkt. No. 9351, 2014 WL 556261, at *41 (FTC Jan. 30, 2014), *aff'd*, *McWane, Inc. v. F.T.C.*, 783 F.3d 814 (11th Cir. 2015). However, the FTC staff was not successful in proving its price-fixing claims, which are the only claims pending against Star in this litigation. *Id.* at *32-38.

Thus, Interim Co-Lead Counsel were well-informed of the facts of the case and the strength of the claims asserted when the terms of the Settlement Agreement were negotiated.

### 2. The Proposed Settlement Falls Within the Range of Possible Approval.

To preliminarily approve this settlement, the Court must decide that the proposed settlement falls within the range of settlement that could *possibly* be approved as fair, adequate and reasonable. Under this standard, this settlement is reasonable in light of the risks of moving forward with litigation towards class certification, summary judgment, and trial. *See, e.g., In re Linerboard Antitrust*

*Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003) ("[a]n antitrust class action is arguably the most complex action to prosecute"); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475-76 (S.D.N.Y. 1998) ("the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal."); *Weseley v. Spear*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989) (noting that antitrust class actions are "notoriously complex, protracted, and bitterly fought"). Continuing this action against Star would entail a lengthy and expensive legal battle with an uncertain outcome in light of the FTC's failure on those claims that implicated Star. The degree of uncertainty supports preliminary approval of the proposed settlement. *See In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

### C.   The Proposed Settlement Class Should Be Certified Pursuant to Rule 23

The propriety of certifying a class solely for purposes of settlement is well established in the Third Circuit. *See, e.g., In re Pet Food Prods. Liability Litig.*, No. 07-2867, 2008 WL 4937632, at *3 (D.N.J. Nov. 18, 2008) ("Class actions certified for the purposes of settlement are well recognized under Rule 23"). A court may grant certification where, as here, the proposed settlement class satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and

496699.1

adequacy), as well as one of the three subsections of Rule 23(b). Here, Direct Purchaser Plaintiffs seek certification of the following Settlement Class:

> [A]ll persons or entities in the United States that purchased DIPF directly from any Defendant at any time from January 11, 2008, through June 30, 2011. Excluded from the Settlement Class are Defendants and their parents, subsidiaries and affiliates (whether or not named as a Defendant in this Action), federal governmental entities, and instrumentalities of the federal government.

Settlement Agreement, ¶ 17.

The factual and legal support for certification of the Settlement Class are set forth below.

### 1. The Proposed Settlement Class Meets the Requirements of Rule 23(a)

#### a. *The Settlement Class Is So Numerous That It Is Impracticable to Bring All Class Members Before the Court*

First, Rule 23(a) requires that the class be so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1). There is no threshold number required to satisfy the numerosity requirement, and the most important factor is whether joinder of all the parties would be impracticable for any reason. *See Stewart v. Abraham*, 275 F.3d 220, 227-28 (3d Cir. 2001) (noting that there is no minimum number to satisfy numerosity and observing that generally the requirement is met if the number of class members exceeds 40). In addition, numerosity is not determined by the size of the class alone, but also by the

geographic location of class members. *Marsden v. Select Med. Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007).

Preliminary information concerning the number of potential class members, as obtained from the transaction data produced by Defendants, indicate that there are approximately 700 members of the proposed Settlement Class, and that these members are believed to be located across the country. The Settlement Class easily satisfies the numerosity requirement.

### b.    *Plaintiffs and the Settlement Class Share Common Legal and Factual Questions.*

Second, Rule 23(a) requires the existence of questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Questions are common to the class if class members' claims "depend upon a common contention" that is "of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The commonality element "'does not require an identity of claims or facts among class members; instead, [t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'" *In re Global Crossing Sec. and Erisa Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004); (quoting *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001)); *see also In re Microcrystalline Cellulose Antitrust Litig.*,

218 F.R.D. 79, 83-84 (E.D. Pa. 2003) ("The members need not have identical claims to have common or factual issues that satisfy commonality.  Instead, all that is required is that the litigation involve some common questions and that plaintiffs allege harm under the same theory.").

In addition, courts in this Circuit have found the commonality requirement to be easily met in antitrust class actions. *See, e.g., In re K-Dur Antitrust Litig.*, No. 01-1652, 2008 WL 2699390, at *4 (D.N.J. Apr. 14, 2008); *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 141 (D.N.J. 2002) (holding that conspiracy to restrain trade is subject to common proof); *In re OSB Antitrust Litig.*, 2007 WL 2253418, at *4 (E.D. Pa. Aug. 3, 2007).

Here, Direct Purchaser Plaintiffs' allegations raise questions of law and fact common to the proposed Settlement Class, including, for example:

> (a) Whether Defendants engaged in a combination and conspiracy to fix, raise, maintain, or stabilize prices of DIPF sold in the United States;
>
> (b) Whether this alleged conspiracy violated Section 1 of the Sherman Act;
>
> (c) The duration of the alleged conspiracy and conduct;
>
> (d) Whether Defendants' conduct caused injury to the business and property of the members of the Class;
>
> (e) The effect of the alleged conspiracy on the prices of DIPF sold in the United States; and
>
> (f) The appropriate measures of damages.

16

Because there are several common legal and factual questions related to liability, the commonality requirement of Rule 23(a)(2) is easily met.

### c. Plaintiffs' Claims Are Typical of the Claims of the Members of the Settlement Class.

Third, Rule 23(a) requires typicality of the class representatives' claims. *See* Fed. R. Civ. P. 23(a)(3). The typicality requirement is satisfied where, as here, the claims of the representative plaintiffs arise from the same course of conduct that gives rise to the claims of the other Settlement Class members, and the claims are based on the same legal theories. *See Baby Neal v. Casey*, 43 F.3d 48, 57-78 (3d Cir. 1994). In *Baby Neal*, the Third Circuit held:

> The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented. The typicality criterion is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees.

43 F.3d at 57-58.

Here, the claims of the representative plaintiffs are typical when compared to those held by the other members of the Settlement Class. The case alleges a conspiracy was among all Defendants to fix prices for DIPF that they sold directly to the representative plaintiffs and other class members which began at least as early as January 11, 2008 and continued through at least June 30, 2011. SCAC ¶ 7.

17

*Id.* Such claims of the representative plaintiffs, like those of the other members of the Settlement Class, arise out of the same alleged anticompetitive conduct by the same Defendants and are based on the same legal theories.

> **d.    *Interim Co-Lead Counsel, Liaison Counsel and Representative Plaintiffs Will Fairly and Adequately Protect the Interests of the Class.***

Fourth, Rule 23(a) requires that the representative parties fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a)(4). As the Third Circuit explained in *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449 (3d Cir. 1977), the adequate representation requirement of Rule 23(a)(4) guarantees "that the representatives and their attorneys will competently, responsibly, and vigorously prosecute the suit and that the relationship of the representative parties' interest to those of the class are such that there is not likely to be divergence in viewpoint or goals in the conduct of the suit."

Here, Interim Co-Lead Counsel have extensive experience and expertise in antitrust disputes, complex litigation, and class action proceedings throughout the United States. *See* ECF Nos. 15 and 16 (Interim Co-Lead Counsel's briefs and supporting documentation in support of appointment). Counsel has vigorously prosecuted this litigation, including successfully defending their claims against two rounds of motions to dismiss, both of which were denied in their entirety. ECF Nos. 116, 117, 271 and 272. Moreover, the named representatives have adequately

represented the interests of the absent members of the class, actively participating in discovery by responding to document requests and interrogatories. Nor are there any conflicts between the named representatives and the absent members of the Settlement Class.  Adequate representation under Rule 23(a)(4) is satisfied.

### 2. The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3).

Once the four prerequisites of Rule 23(a) are met, as in this case, plaintiffs must also show that the proposed Settlement Class satisfies one of the requirements of Rule 23(b), in this case Rule 23(b)(3). Under Rule 23(b)(3), class certification is authorized if (i) "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and (ii) "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). With respect to both requirements, the Court need not inquire whether the "case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (citation omitted).

#### a. Common Questions of Law and Fact Predominate.

The Rule 23(b)(3) predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 614-15. The mere existence or possibility of some individual

issues does not defeat class certification. *In re Mercedes Benz Antitrust Litig.*, 213 F.R.D. 180, 186 (D.N.J. 2003).

A plaintiff seeking certification of an antitrust class action must show that common or class-wide proof will predominate with respect to: "(1) a violation of the antitrust laws . . . , (2) individual injury resulting from that violation, and (3) measurable damages." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008). The Supreme Court has recognized that the Rule 23(b)(3) predominance test can be "readily met" in antitrust cases. *Amchem*, 521 U.S. at 624-25; *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008) (predominance is readily met because "proof of the conspiracy is a common question thought to predominate"); NEWBERG ON CLASS ACTIONS, § 18.26, 86-89 (4th ed. 2002) ("In antitrust suits, the issues of conspiracy, monopolization, and conspiracy have been viewed as central issues which satisfy the predominance requirement."); *In re Buspirone Patent Litig.,* 210 F.R.D. 43, 58 (S.D.N.Y. 2002) (finding predominance requirement satisfied where "[p]roof of the allegedly monopolistic and anti-competitive conduct at the core of the alleged liability is common to the claims of all the plaintiffs" (citing *Amchem*, 521 U.S. at 625)); *Mercedes Benz*, 213 F.R.D. at 186-87 (holding that common issues predominated on issue of alleged antitrust violation).

In addition, the predominance standard is met by a showing that the existence of individual injury resulting from the alleged antitrust violation is capable of proof at trial through evidence that is common to the class rather than individual to its members. *See Comcast Corp. v. Behrand*, 133 S. Ct. 1426, 1430 (2013).  The plaintiffs' damages model must be tied to and consistent with the plaintiffs' particular theory of antitrust impact.  *Id.* at 1433.

Here, representative plaintiffs and the members of the Settlement Class allegedly paid supracompetitive prices for DIPF, prices higher than they would have been absent Defendants' alleged unlawful conduct. The representative plaintiffs and the members of the Settlement Class have the same interest in establishing liability, and they all seek damages for the ensuing overcharge. They all will rely on the same evidence of Defendants' antitrust violations and will rely on class-wide damages models to show the fact and amount of harm that they incurred. The predominance requirement is easily satisfied.

> **b.    A Class Action Is the Superior Method to Adjudicate These Claims.**

The Court must balance, in terms of fairness and efficiency, the advantages of class action treatment against alternative available methods of adjudication. *In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998). In evaluating the superiority of a class action, the Court should inquire as to the class members' interest in individually controlling the prosecution

of separate actions, the extent and nature of any litigation concerning the controversy already commenced by members of the class, and the desirability or undesirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).

Here, a class action is superior to other available methods of adjudication "because litigating all of these claims in one action is far more desirable than numerous separate actions litigating the same issues." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 259. By proceeding as a class action, resolution of common issues will lead to an efficient use of judicial resources and a result that is binding on all members. In addition, the members of the Settlement Class, like the representative plaintiffs, are geographically dispersed, which poses the risk of multiple scattered lawsuits with contradictory results. These issues led the Supreme Court to acknowledge that the unique qualities of antitrust litigation mean that a class action is often superior to individual lawsuits. *Amchem*, 521 U.S. at 617.

**IV.   REQUEST TO APPOINT GARDEN CITY GROUP, LLC AS CLAIMS ADMINISTRATOR AND CITIBANK AS ESCROW AGENT**

Interim Co-Lead Counsel have selected Garden City Group, LLC and seek for approval of it as the claims administrator for the proposed Settlement. Garden City Group will handle all aspects of providing notice to the Settlement Class and claims administration including mailing and publishing the notice, managing a call center and website to handle all questions regarding completion and submission of

496699.1

the claim forms, physically processing the claims and inputting the data on computers, reviewing claims, informing class members whether or not their claims are deficient or complete, and ultimately, distributing the Settlement Fund subject to Court approval.

Garden City Group is one of the country's largest and most experienced settlement administration firms, and has personnel well-versed in antitrust matters. Since its inception nearly 30 years ago, Garden City Group has administered over 1,700 settlements, processed over 52 million claims, disbursed over $35 billion in recoveries, issued more than 30 million checks and wires, disseminated approximately 300 million notices, sent hundreds of millions of emails, handled millions of calls, and designed and launched hundreds of settlement websites.

Interim Co-Lead Counsel have also selected and nominate for approval Citibank as escrow agent for the proposed settlement.

## V.   <u>NOTICE TO THE CLASS</u>

Direct Purchaser Plaintiffs propose to move the Court at a future date for a proposed form of, and means for disseminating, notice of the Settlement to the members of the Settlement Class. The notice plan that will be submitted by the Direct Purchaser Plaintiffs shall meet the requirements of Rule 23, shall comport with due process, and shall fairly apprise potential members of the Settlement Class of the existence of the Settlement Agreement and their options under it.

23

Direct Purchaser Plaintiffs respectfully request that notice of this Settlement and any other timely settlement in this litigation be combined with notice of the Settlement with SIGMA, so as to minimize costs.

## VI.  PRELIMINARY APPROVAL ORDER

Direct Purchaser Plaintiffs respectfully submit that the proposed Settlement Agreement with Star falls within the range of possible approval and that certification of the Settlement Class is appropriate. Direct Purchaser Plaintiffs therefore request that the Court:

1. Preliminarily approve the Settlement Agreement and find that its terms are sufficiently fair, reasonable, and adequate for notice to be issued to the settlement class as defined in the Settlement Agreement;

2. Certify the Settlement Class, for purposes of settlement only pursuant to Federal Rule of Civil Procedure 23(c), and authorize plaintiffs to represent the Settlement Class; and

3. Approve Garden City Group, LLC as Administrator of the Settlement, and Citibank, N.A. as escrow agent.

## VII.  CONCLUSION

For the foregoing reasons, the Court should grant Direct Purchaser Plaintiffs' Motion for Preliminary Approval and certify the Settlement Class.

Dated:  July 6, 2015

24

Respectfully submitted,

/s/ Mayra V. Tarantino_____

Mayra V. Tarantino
LITE DEPALMA GREENBERG, LLC
570 Broad Street, Suite 1201
Newark, NJ  07102
(973)623-3000
mtarantino@litedepalma.com
*Interim Co-Liaison Counsel for*
*Direct Purchaser Plaintiffs*

Robert N. Kaplan
Richard J. Kilsheimer
Gregory K. Arenson
Elana Katcher
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY  10022
(212) 687-1980
rkaplan@kaplanfox.com
rkilsheimer@kaplanfox.com
garenson@kaplanfox.com

Gary L. Specks
KAPLAN FOX & KILSHEIMER LLP
423 Sumac Road
Highland Park, IL 60035
(847) 831-1585
gspecks@kaplanfox.com
*Interim Co-Lead Counsel for*
*Direct Purchaser Plaintiffs*

/s/ Karen A. Confoy_____

Karen A. Confoy
FOX ROTHSCHILD LLP
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, NJ 08648-2311
(609) 896-3600
kconfoy@foxrothschild.com
*Interim Co-Liaison Counsel for*
*Direct Purchaser Plaintiffs*

Kit A. Pierson
Robby Braun
COHEN MILSTEIN SELLERS &
   TOLL PLLC
1100 New York Avenue, NW
Suite 500 West
Washington, DC  20005
(202) 408-4600
kpierson@cohenmilstein.com
rbraun@cohenmilstein.com

Christopher J. Cormier
COHEN MILSTEIN SELLERS
& TOLL PLLC
2443 S. University Boulevard, #232
Denver, CO 80210
(720) 583-0650
ccormier@cohenmilstein.com
*Interim Co-Lead Counsel for*
*Direct Purchaser Plaintiffs*

496699.1

## <u>CERTIFICATE OF SERVICE</u>

I, Mayra V. Tarantino, hereby certify that on July 6, 2015, I caused a copy of

Direct Purchaser Plaintiffs' (a) Notice of Motion in Support of Direct Purchaser

Plaintiffs' Motion For Preliminary Approval of Settlement With Defendant Star

Pipe Products, Ltd., (b) Memorandum of Law In Support of Direct Purchaser

Plaintiffs' Motion For Preliminary Approval of Settlement With Defendant Star

Pipe Products, Ltd., (c) Declaration of Robert N. Kaplan In Support of Direct

Purchaser Plaintiffs' Motion For Preliminary Approval of Settlement With

Defendant Star Pipe Products, Ltd., (d) Form of Order, and (e) this Certificate of

Service to be served on all Counsel of Record through the Court's ECF system.


Dated:  July 6, 2015                                    <u>*s/Mayra V. Tarantino*</u>
                                                       Mayra V. Tarantino

496699.1